## No. 132.

### THE STATE OF LOUISIANA VS. JAMES BIRDWELL.

In a criminal prosecution a juror is not incompetent because it is shown that on the day before the trial he declared in a public store that he intended to convict every person tried before him as a juror, and when it is shown that on his *voir dire* the juror showed that he had no bias or prejudice in the case. Courts will not consider gossip in determining the legal qualifications of jurors.

A juror who acknowledges to have formed an opinion in the cause, but asserts that such an opinion will readily yield to the evidence on the trial, and that he feels able to do impartial justice in the case, is competent. State vs. Dugay, 35 Ann. 327; and other decisions affirmed.

Evidence to show that the accused had made efforts to cause the deceased to leave the country, in reference to a criminal prosecution instituted against him by the latter, who is the material witness in such case, and that in that connection he had made threats

---

*Absent during the whole of this term.

against the deceased, is admissible, as it tends to show elements of malice in the homicide.

Evidence of the dangerous character of the deceased and of threats made by him against accused, unless preceded or accompanied by evidence of an assault or overt act, or of some hostile demonstration, at the time of the killing, is inadmissible as a defense against the charge of murder. The law of self-defense expounded.

APPEAL from the Eleventh District Court, Parish of Sabine. *Pierson*, J.

*D. C. Scarborough*, District Attorney, for the State, Appellee.

*J. F. Smith, T. C. Armstrong* and *Wm. Goss* for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J. Appealing from a sentence to the Penitentiary for life, on a charge of murder, the defendant complains, by bills of exception, as follows:

1. That the judge erred in accepting as competent a juror who had on the previous day declared in a public store that he "intended to convict every person tried before him as a juror." The bill shows that on his *voir dire* the juror stated that he had made the remark imputed to him in a jocular manner; that he had no opinion or bias either way in the case on trial; and his examination convinced the judge, as it satisfies us, that he was a competent juror. We can but commend the course of the judge in disregarding an imprudent or light remark made by a juror out of the presence of the court.

Corner grocery gossip cannot be considered as an element in the consideration of a serious question touching the legal qualification of a juror in a trial involving the life or liberty of a human being.

2. He charges error in the ruling of the judge on the qualification of a juror who stated on his *voir dire*, in substance, that from conversations which he had had with several persons, not known to him as witnesses in the case, he had formed an opinion, which would only yield to different evidence.

During a further examination the juror stated that he had no bias or prejudice for or against the accused, whom he did not know; and that the opinion which he had formed, and which rested on rumor, would readily yield to evidence on trial. Whereupon the judge promptly and correctly ruled that he was a competent juror, and overruled the objection of defendant's counsel to his competency.

The serious manner with which counsel for the accused press their objection before this Court satisfies us that our recent decision in the

case of the State vs. Dugay, 35 Ann. 327, has thus far escaped their attention. In that case we reiterated the well established rule which recognizes as competent a juror who states that he has formed an opinion in the case, but who asserts at the same time that he is free of bias or prejudice, and that he feels able to do impartial justice according to the law and the evidence in the case.

As we said in the Dugay case: "We now distinctly and emphatically reiterate that this is the correct rule, with the reasonable hope that it will be clearly understood by the profession."

3. He next charges that the judge erred in admitting, over his objection, the testimony of a witness intended to show that some three weeks previous to the homicide the accused had solicited the witness to induce the deceased "to leave the country." The bill shows that this request was made with reference to a criminal prosecution which the deceased had instituted against the accused, and in which he was the material witness. It further appears that the accused had made threats against the deceased in connection with that prosecution. Under that state of the case the evidence was admissible. Malice being of the essence of murder, it was competent for the State to prove a feeling of ill-will and enmity on the part of the accused to the deceased, as both are elements of malice.

The evidence, although not immediately connected with or making part of the *res gestae*, was not irrelevant, as charged by counsel, because it served to enlighten the minds of the jurors on some of the motives which impelled the perpetration of the homicide, and because it tended to show premeditation, one of the essential elements of murder.

4. The defendant complains of the rejection of evidence offered by him to show the general dangerous character of the deceased, and to prove threats previously and repeatedly made by him against the life of the accused. The evidence was excluded on the ground that the accused had not yet shown any overt act, assault or hostile demonstration by the deceased against the accused at, or immediately before, the time of the killing.

It appears from the bill that from the evidence previously introduced and uncontradicted, it had been shown that the deceased had been killed at a steam mill where he was employed, and to which the accused had gone in the evening in company with another person, and that he was shot when in the act of leaving for his home with a bag of meal on his shoulders and when he was walking away from the ac-

cused, with whom he had just exchanged a few words in answer to the inquiry by the accused whether deceased had or not threatened to kill him.

To his inquiry the deceased made answer by asking him, "Who told you so?" To which the defendant had answered in a violent manner that it made no difference. Whereupon the deceased replied, "Let me alone, I don't want any fuss with you;" and walked away when he was shot, and in his flight, before falling, was pursued by the accused.

We have taken the trouble to thus' detail these circumstances, because they conclusively show a state of things entirely inconsistent with the circumstances, which could alone justify the introduction of the evidence of the dangerous or violent character of the deceased, and of previous threats alleged to have been made by him against the life of the accused.

It must be noted that the evidence was offered as a defense to the charge of murder, without restriction or qualification, of intending the same to rebut the evidence in proof of malice previously introduced by the State. That feature of the question entirely removes it from the effect of the rulings and *dicta* in the cases or the State vs. McNeely, 34 Ann. 1022, and the State vs. Cooper, 32 Ann. 1085, relied upon by counsel. Under the authority of those cases the evidence might have been admissible if offered with the avowed and exclusive object and purpose to rebut the proof of malice or to mitigate the offense charged. But in the absence of such a restriction, and when offered, as in this case, as a general defense to the charge of murder, and in the abs·nce of any proof to show an assault, an overt act or a hostile demonstration as the immediate occasion of the homicide, that evidence has uniformly been held to be inadmissible.

The rule of its exclusion rests on the wise and philosophical reason that no one is justifiable in killing a man simply because he is vicious, quarrelsome or dangerous, or because he has made threats which he manifests no intention of carrying into effect. Wharton's American Criminal Law, sec. 641; State vs. Jackson, 33 Ann. 1087; State vs. Vines, 34 Ann. 1074.

5. The last bill embodies a complaint against the refusal of the judge to give the following special charge to the jury:

"What constitutes such an overt act as will warrant a person in slaying his enemy in his own defense, is a question for the jury, to be resolved according to the circumstances of each particular case; no general rule can be laid down upon the subject."

In lieu of which the judge gave the following charge:

"That the law requires such an overt act on the part of the deceased at the time as would be calculated to produce in the mind of the prisoner a reasonable apprehension that the design was to take his life or to do him great bodily harm. To excuse homicide in self-defense, the assault must be perilous, not any act, not even such as the jury ought to excuse, but dangerous action, imminent peril, necessity can alone excuse."

It takes but a glance at the two propositions as quoted to satisfy the legal mind that the judge's refusal to give the charge suggested by counsel was eminently proper, and that the charge which he gave contains the true and correct doctrine of self-defense as expounded by nearly all American courts, and as announced by all respectable authors on criminal law.

This concludes the consideration of all the objections and contentions suggested by the zeal and ingenuity of counsel in their laudable efforts to extricate their client from the clutches of the law, and we have found no error to his prejudice, or no reason to relieve him from the penalty of his own act.

Judgment affirmed.