## VOLUME 128

---

# CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

---

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1910

---

(54 South. 402.)

No. 18,544.

## STATE v. WERNER.

(Jan. 30, 1911. Rehearing Denied Feb. 27, 1911.)

*(Syllabus by Editorial Staff.)*

1. INDICTMENT AND INFORMATION (§ 9*)—PRELIMINARY EXAMINATION—NECESSITY.

Grand juries may originate criminal prosecutions, and a preliminary examination by a committing magistrate is not indispensable to the finding of an indictment.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 34; Dec. Dig. § 9;* Criminal Law, Cent. Dig. §§ 415–434, 461–471.]

2. INDICTMENT AND INFORMATION (§ 9*)—PRELIMINARY EXAMINATION—REQUISITES.

A trial under an indictment, found pending a preliminary examination before a committing magistrate, will not be delayed for the purpose of having a preliminary examination.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 34; Dec. Dig. § 9;* Criminal Law, Cent. Dig. §§ 415–434, 461–471.]

3. CRIMINAL LAW (§ 665*)—SEPARATION OF WITNESSES—EXCEPTIONS.

Counsel in the case are always excepted from the rule requiring the separation of witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1550; Dec. Dig. § 665.*]

4. CRIMINAL LAW (§ 365*) — EVIDENCE—RES GESTÆ—OTHER OFFENSES.

Where the shooting of the sister of decedent immediately followed the shooting of decedent, and the shooting of the two was prompted by the same animus, the shooting of the sister formed a part of the res gestæ, so that evidence of the injuries inflicted on the sister was admissible to show the true character of the accused's act in killing decedent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 807; Dec. Dig. § 365.*]

5. HOMICIDE (§ 163*)—CHARACTER OF DECEDENT—THREATS—EVIDENCE.

Where several witnesses testified that decedent made no hostile demonstration against accused at the time of the killing, and the testimony to the contrary was the testimony of accused alone, evidence of the bad character of decedent and of threats made by him was properly excluded.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 310–317; Dec. Dig. § 163.*]

6. HOMICIDE (§ 160*) — EVIDENCE — ADMISSIBILITY.

One on trial for murder by shooting may show a reason for being armed other than that imputed to him of intending to use the weapon to kill decedent.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 301; Dec. Dig. § 160.*]

7. HOMICIDE (§ 339*)—HARMLESS ERROR—ERRONEOUS EXCLUSION OF EVIDENCE.

Where accused shot decedent without provocation at a time he was neither going to nor returning from his work, the exclusion of evidence that accused's employer had advised him to be armed when going to or returning from work was not prejudicial.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 714; Dec. Dig. § 339.*]

8. CRIMINAL LAW (§ 1091*)—BILL OF EXCEPTIONS—SUFFICIENCY.

Where the entire testimony and the objections and rulings thereon were taken down and considered by both parties, and the trial judge, to be a part of the bill of exceptions as if expressly made a part thereof, and evidence was excluded, without assigning any grounds therefor, a bill of exception complaining of the exclusion was sufficient as against the objection that the reason for it was not stated.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2828; Dec. Dig. § 1091.*]

9. CRIMINAL LAW (§ 730*)—HARMLESS ERROR—MISCONDUCT OF STATE'S COUNSEL.

The action of the state's counsel, informed by the court in private that the wife of accused wounded by him at the time of the killing of decedent could not testify, in placing the wife on the stand and thereby showing to the jury the wounds inflicted on her, was not prejudicial to the accused, where she did not testify and where the judge warned the jury not to be influenced by her appearance.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693; Dec. Dig. § 730.*]

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chretien, Judge.

Louis Werner, Jr., was convicted of manslaughter and he appeals. Affirmed.

Henry O. Hollander and B. B. Howard, for appellant. St. Clair Adams, Dist. Atty., and Warren Doyle, Asst. Dist. Atty., for the State.

PROVOSTY, J. The defendant was tried for murder, and convicted of manslaughter, and was sentenced to ten years at hard labor, and he has appealed.

An affidavit was made against him in the First city criminal court, charging him with the crime of which he has now been convicted. That court had jurisdiction only to commit, bail or discharge. Before any hearing had been had on the affidavit, the grand jury found an indictment against him in the criminal district court—the court having jurisdiction to try and punish—and the First city criminal court dismissed the affidavit, over his objection, he insisting that a preliminary examination be had. This objection he renewed when called for arraignment upon the indictment; and he then again asked that a preliminary examination be had in the First city criminal court upon the affidavit.

That when an indictment has been found by the grand jury, and presented to the court, there is nothing to do but to proceed with the trial of it, would seem to be a plain proposition. The opposite could be true only if grand juries could not originate criminal prosecutions. But they can; in fact, that is what they are for. In State v. Anderson, 30 La. Ann. 558, this court, through Manning, C. J., said:

"It has never been supposed that a preliminary examination by a committing magistrate was an indispensable precursor to a prosecution either by indictment or information."

In State v. Bunger, 14 La. Ann. 461, where the validity of the indictment was challenged on the ground that the prosecution had originated in the grand jury room without previous preliminary examination before a committing magistrate, this court said:

"It is the common-law practice, and a practice invariably followed in this state, and never before questioned, that prosecutions may originate in the grand jury room."

The court cites Chitty, Cr. L. p. 163. This last case and many others are cited in 12

Cyc. 306, as authority for the proposition that:

"An indictment will not be dismissed because of the lack of a preliminary examination."

The fact is that in the present case the accused has not objected to the validity of the indictment, but merely to any proceedings being had upon it until he had had a preliminary examination in the First city criminal court·upon the dismissed affidavit. How a preliminary examination could be had upon an affidavit no longer before that court, the learned counsel for the accused do not explain. Nor is any explanation offered why if a preliminary examination had been desirable or necessary either for perpetuating testimony or for determining the bailability of the offense the same could not have been had before the court before which the case was pending, or why the necessity for same should have been any obstacle to arraignment and the speedy trial of the case. The decisions cited by accused, namely, State v. Caulfield, 23 La. Ann. 148, State v. Le Blanc, 116 La. 827, 41 South. 105, State ex rel. Attorney General v. Judge, 104 La. 237, 28 South. 996, and others which might be cited, are in no wise opposed to this; but merely hold that, on a proper showing being made of the necessity of a preliminary examination either for perpetuating testimony which would otherwise be in danger of being lost, or for inquiring into the case with reference to bail, the court before which the case is pending must proceed to hold same. No such showing was made in this case, and no request was made that the court in which the case was pending hold an examination; but the point raised was that the trial of an indictment cannot be proceeded with unless there has been a preliminary examination, or, in other words, that the trial may be delayed for the purpose of having a preliminary examination.

An order having been made for the sep-aration of the witnesses, the court exempted from it the Assistant District Attorney engaged in the trial of the case. To this exemption the accused excepted and reserved a bill. Counsel in the case are always excepted from the rule. Greenleaf, vol. 1, § 432 (a); Wharton Crim. Ev. § 446; Abbott's Trial Brief, 383; Marr's Crim. Jur. § 423.

The deceased was the brother of the wife of the accused. The three were standing within a few feet of each other. As soon as accused drew his pistol and fired upon the deceased, the wife ran. She had gone but a few steps when accused fired three times at her. A witness was asked whether as she ran she had any blood upon her. The question was objected to "on the ground that it does not form part of the crime charged."

The shooting of the sister followed that of the brother without any appreciable interval hardly between them, and was evidently prompted by the same animus; it formed, therefore, a part of the res gestæ. The blood "running down her dress" (to use the expression of the witness) tended to show that, in her case, too, the firing had been with deadly intent. The evidence was therefore admissible, we think, for the purpose of showing the true character of the act of the accused in firing upon the brother.

Bills Nos. 4, 7, 8, 9, 10, relate to the refusal of the court to allow evidence of the bad character of the deceased, and of threats, because no foundation had been laid for the introduction of such evidence by proof of a hostile demonstration on the part of the deceased at the time of the shooting. From the testimony of several witnesses it appeared that no hostile demonstration had been made, and the only evidence to the contrary was that of the accused himself. Under these circumstances the ruling was correct.

Bill No. 6. The journeymen bakers were on a strike at the time of this homicide, and

the accused was a journeyman baker, and was employed, we gather, as a strikebreaker. For the purpose of accounting for his carrying a pistol on the fatal occasion, he testified that he was on his way to his work when the encounter with his brother-in-law took place, and that he had the pistol because of the advice of his employer to carry it, and had sought out his wife only with a view to a reconciliation with her. In corroboration of this, he offered his employer as a witness to prove that the latter had advised his strikebreakers to be armed when going to or returning from their work. The evidence was objected to, and the objection was sustained. The grounds of the objection are not stated. We think the evidence should have been admitted; for, certainly, it was relevant for defendant to offer some other reason, if he could, for his having been armed, than that imputed to him of intending to use the weapon upon his wife or his brother-in-law. But, while the evidence was relevant, its force, or effect, was so completely nullified by other facts appearing from the testimony of the accused himself, that its exclusion must be considered not to have been sufficiently prejudicial to justify the setting aside of the verdict. The said other facts are that accused and his wife had separated and were living apart and that on that day, a charge of nonsupport, made against him by his wife on the preceding day in the juvenile court, had been tried, and he had been condemned to pay her $9 monthly or go to jail; and that, late in the afternoon, at a different hour from that of his going to his work, he went to where she lived with her mother, two miles from where he lived and had his work, and in another part of the city, and, without provoca-tion, committed the homicide. He was therefore neither going to nor returning from his work, when he committed the homicide.

The sufficiency of this bill No. 6 in point of form is denied by the state, in that the reasons for the exclusion of the evidence are not stated. The objection would be good (Marr, Crim. Juris. 488) and the same would apply equally to all the bills in this case, were it not that the entire testimony, together with all objections to evidence and the rulings thereon, was taken down, and has been considered by both parties and by the judge to be part of the bills as if expressly made part, and that this note of evidence shows that the evidence was excluded without any grounds having been assigned for its exclusion.

On motion for new trial the accused urged these same foregoing grounds, and also the additional ground that "solely for the purpose of prejudicing and biasing the minds of the jury against the accused," the wife of the accused was placed upon the stand by the prosecution "with her head bandaged and her hand in a sling from an injury not connected with this case," and that this was done "after the court had duly notified the state's counsel in private that he would not allow the wife to testify."

Here, again, we do not think any prejudice sufficiently serious can have been done the accused to justify setting aside the verdict. The wife did not testify. Objection was made at once, and the judge sustained the objection, and, at the same time, warned the jury in these words:

"Gentlemen, I charge you that you are not to be influenced by the appearance of the wife, as it has absolutely nothing to do with the case."

Judgment affirmed.