THOMPSON, J.
 

 The defendant was charged in separate indictments with the murder of Mrs. Annie Flink and her young son Henry Sylvester Flink. The homicides occurred on the same day in the grocery store of Mrs. Flink, and the instrument used was an axe.
 

 It appears from the record that the defendant entered the store, having the axe in his hands, and asked young Flink for a package of cigarettes, and when the cigarettes were given to him he struck the young man with the axe and he fell to the floor. The mother immediately came in and the defendant struck her with the axe.
 

 The mother died where she had fallen. The son was carried to the charity hospital where he later died. After committing the two homicides the defendant went behind the counter, took a small box in which the money was kept and left the store.
 

 The defendant, after a lunacy commission, and a special jury impaneled to try the issue of insanity, had declared him sane, presently and at the time the crime was committed, was placed on trial for the killing of Mrs. Flink. The result of that trial was a qualified verdict, and the defendant was sentenced to the penitentiary for life.
 

 That conviction and sentence have become final.
 

 
 *730
 
 The defendant again interposed the plea of insanity against a trial for the killing of young Flink, and was met by a report of a lunacy commission, and a verdict of a special jury to whom the issue was submitted, that he was presently sane and sane at the time the crime was committed.
 

 On being called for trial for the murder of young Flink the counsel appointed by the court filed a motion to quash the indictment on the ground that the offense for which defendant was about to be put on trial was committed on the same day, at the same time, and resulted from the same continuous unlawful transaction as did the killing of Mrs. Flink, for which defendant had been tried and convicted. That the attempt of the state to place the defendant on a second trial under the circumstances alleged was in direct violation of the mandatory provisions of article 218 of the Code of Criminal Procedure approved July 2, 1928.
 

 To this motion to quash the district attorney filed a demurrer alleging that the motion to quash was really a plea of autre fois convict. That the two killings constituted separate and distinct crimes and were properly charged in separate indictments, and hence that the first conviction and sentence was no bar to a trial for the other murder.
 

 The demurrer was sustained and the motion to quash was overruled, to which ruling the defendant reserved a bill of exception.
 

 On a trial of the case the jury returned an unqualified verdict on which the defendant was sentenced to death.
 

 The district judge gave the following reasons for overruling the motion to quash:
 

 . “Each homicide constituted a separate, independent and complete transaction. Each homicidal transaction was composed of acts disconnected from, and distinctly independent of, the acts constituting the other homicidal transaction.”
 

 “The fact that theft was the motive of both homicides gives them some color of unity as to general purpose, but does not constitute them one offense.”
 

 We are in perfect accord with the trial judge and the position of the district attorney that the facts as presented constituted two separate and distinct homicides, and that the conviction or acquittal of the defendant on a proper charge for one of the offenses would not be a bar to a prosecution for the other under the authorities cited and relied on by the state. • ■
 

 While the proof in support of either charge • would be admissible on a trial of the other as a part of the res gestse, still the proof necessary to establish the corpus delicti in one of the homicides would be different from that required to prove the corpus delicti in the other.
 

 The rule has long been recognized by the text-writers, by the jurisprudence of this state as well as that of the other states, that, in order to be a bar to a second prosecution and to justify a plea of former jeopardy, the two offenses must be the same in both law and fact.
 

 “The test of once in jeopardy is whether on the former trial the accused could have been convicted of the crime charged against him on the second trial.” State v. Foster, 156 La. 898, 101 So. 255, 258, and numerous authorities there cited.
 

 It has also been the recognized rule that, though a criminal act may operate on more than one person or thing, nevertheless,if it be but one act consummated at one time, it may be charged as one offense.
 

 This was held in State v. Batson, 108 La. 479, 32 So. 478.
 

 
 *732
 
 It was also stated in that case that an in-' dictment charging in one count the murder of six persons was not had for duplicity, unless, it appears upon its face that the deaths resulted from two or more distinct acts.
 

 On the other hand, it has been likewise held that two Or more crimes may be committed at the same time or result from the same act or unlawful transaction and may be separately indicted and separately tried. Thus in State v. Montcrieffe, 165 La. 296, 115 So. 493, 494, this court said that: “The fact that a person commits several separate and distinct' crimes at the same time, or in immediate, consecutive order, is no reason why he should not be indicted and, tried for each of said crimes. ' s
 

 “This rule is'so universally recognized and applied that any citation of authority would be superfluous.”
 

 All that has been said however, with refr erence to the plea of former conviction, the multiplicity of crimes growing out of a single act or one continuous transaction and the right 'of the state to prosecute for separate offenses growing out of one unlawful transaction under separate indictments, applies to conditions existing prior to the adoption of the Code of Criminal Procedure.
 

 The. question hére presented, therefore, is not whether the second prosecution was for the sainé crime on which the defendant had previously been convicted, nor whether the two crimes were separate and independent crimes, for that is conceded, and indeed the provision of the Code recognizes the fact that two or more distinct' crimes may arise from ¿’single act, or from one continuous unlawful transaction. „
 

 The question directly presented by the motion to quash is whether the two homicides resulted from one continuous unlawful transaction, and, if so, whether they can be prosecuted under separate indictments.
 

 Article 218 of the Criminal Code declares that when two or more crimes result from a single act, or from one continuous unlawful transaction, only one indictment will lie; but each of said distinct crimes may be separately charged in distinct counts in the same indictment.
 

 And article 226 of the Criminal Code provides that the right to compel the district attorney to elect on which charge of an indictment he will proceed, whether the charge be contained in the same count or in separate counts, is confined to cases where the indictment contains charges which are entirely distinct and grow out of different transactions.
 

 . There is no ambiguity in the language made use of in the two articles of the Code, and it appears so clear to us as to leave nothing for interpretation.
 

 The statute declares in unmistakable -and plain English that if two or more crimes result from a single act, or from one continuous unlawful transaction, there can be but one indictment, and each or all of such crimes must be charged in that one indictment if the state expects to prosecute for more than one of the crimes.
 

 And where two or more crimes are charged .in the same indictment the state cannot be required to elect on which charge it will try the accused, save and except where the charges are entirely distinct and grow out of different transactions.
 

 The language is both mandatory and prohibitory. It is mandatory in that the grand jury must return but one indictment, including therein the several crimes in separate and distinct counts.
 

 It is prohibitory in that it forbids separate indictments and'separate prosecutions for two
 
 *734
 
 or more crimes resulting from a single act or from one continuous unlawful transaction.
 

 The statute means this or it means nothing. - If it does not mean what the language plainly indicates, then the compilers of the Code and the lawmakers in adopting it must be held guilty of writing into the Code something without a purpose and without meaning.
 

 The members of the code commission were lawyers of experience in criminal law and criminal procedure. Each of them had served as district attorney, and we must assume that they were well aware of the line of jurisprudence which had theretofore prevailed recognizing the right of the state to prosecute under as many indictments as there were crimes committed in a single act or which resulted from one continuous transaction.
 

 There had never been, before the -adoption of the Code, any general statute of this state requiring or authorizing the inclusion of more than one separate and distinct crime in one indictment; even though such crimes resulted from one continuous transaction. The only statute on the subject which we can now call to mind is the statute which permitted three separate larcenies to be included in one indictment or information, where the larceny was of property belonging to the same owner and the offenses were committed within six months of each other. -
 

 We assume, therefore, that the very purpose of the statute in question was to avoid a multiplicity of indictments and separate trials for. two or more offenses involved in or resulting from one act or from one continuous transaction.
 

 The statute is in the interest both of the state and the accused.
 

 It does away with the trouble and expense of two or piore trials, and will no doubt in a measure tend to expedite the criminal court procedure and the administration of public justice.
 

 And there can be no reason in law or logic why the state should not be limited to one indictment and one trial for two or more crimes of like magnitude and triable before the same tribunal, where they are so related, connected, and continuous as to form but one transaction.
 

 That the two homicides were committed in one continuous unlawful transaction, there is scarcely room for difference of opinion. The defendant entered the store with an unlawful design. He carried into the store the death dealing and deadly weapon. He struck young Blink, and as Mrs. Blink appeared he felled her to the floor with the same implement. There was scarcely any appreciable interval of time between the killing of the boy and that of his mother. Both of the victims of his assault having been placed beyond interference with his design, the defendant then proceeded to rob the store.
 

 The court is fully warranted therefore, in holding that the two killings and -all that was done by the defendant from the time he entered the store until he left constituted one continuous and uninterrupted unlawful transaction within the clear meaning of the statute under consideration.
 

 No one would doubt for a moment that every act and every movement of the defendant as well as that of the two- victims, from the time he entered the store until he left, would have -been admissible on the trial for either killing as a part of the res gestse, and as a part of one continued transaction.
 

 It is upon this theory that proof of a different crime from the one for which an accused is being tried has been universally admitted as a part of the res gestae.
 

 
 *736
 
 In. a prosecution where the accused killed his wife and the wife’s father reached the scene of action immediately after the accused shot his wife and his mother-in-law, and the accused then attempted to shoot his father-in-law, the evidence to show the attempt to shoot the father-in-law was held admissible as a part of the res gest® — the killing of the wife and the attempt to kill the father-in-law constituting one continuous transaction. State v. Simon, 131 La. 520, 59 So. 975.
 

 Where the shooting of the sister followed that of her brother without any appreciable interval .between them, both shootings being prompted by the same animus, testimony as to the second shooting was held admissible as a part of the res gest® on the theory that the two crimes formed one continuous transaction. State v. Werner, 128 La. 1, 54 So. 402.
 

 In State v. Blount, 124 La. 204, 50 So. 12, the defendant killed Freeland, Mrs. Freeland, and her daughter on the public road. He was indicted separably for the three killings. On a trial for the killing of Freeland the defendant objected to evidence of the killing of the two women, but the objection was overruled because the killing of the two women and the man formed one continuous transaction, closely Jinked together, and were .parts of the res gest®.
 

 In State v. Robinson, 112 La. 940, 36 So. 811, the accused shot the deceased, ran about 12 feet and turned and'shot another person. An objection was made to the testimony of the second shooting on the ground that it was proving another and separate crime. The court overruled the objection on the ground that the second shooting was so intimately connected with the first as to form one transaction with the first crime.
 

 Cases sustaining the same ruling may be multiplied, but we cite the few simply to show that the court has uniformly regarded the killing of two or more persons at the same time or in immediate connection with each other) though separate and distinct crimes, as constituting one continuous transaction.
 

 Our conclusion is that the two homicides here involved resulted from one continuous unlawful transaction and should have, been included in one indictment. That the state having elected to indict for the two offenses separately and to try the accused for the murder of Mrs. Flink, it is barred from thereafter trying the defendant under a separate indictment for the murder of Henry Sylvester Flink.
 

 This view renders it unnecessary to consider the other bills of exception relied on by defendant.
 

 For the reasons assigned, the conviction and sentence are set aside, the motion to quash is sustained, and the defendant is discharged from further prosecution under the indictment herein pending against him.
 

 BRUNOT, J., dissenta