McCALEB, Justice.
 

 Shortly before midnight on May 27, 1956, a 35 year old white female, while walking on North Baton Rouge Avenue to her home in Baton Rouge following a visit to a friend, was seized from behind by a Negro man who threw a red bandanna handkerchief around her mouth and dragged her down alongside a slough, or drainage canal, which runs under the street at this particular location. Thereupon the man began choking the woman and told her that she knew what he wanted and that, if she did not let him have it, he. would kill her. She attempted to scream but her outcries were muffled by the red bandanna handkerchief which the man had placed over her mouth and she finally submitted and the man raped her. After consummating the act, the man again threatened her with death if she reported him. The victim then ran to her home and notified the police. Appellant, a 26 year old Negro, was arrested the next day and, after questioning, confessed the crime. He was thereafter indicted, tried and convicted of aggravated rape and sentenced to death by electrocution. He has appealed from his conviction and sentence, relying on nine bills of exceptions for a reversal.
 

 Bill No. 1 was taken to the overruling of a motion to quash the indictment and the general venire which was predicated on the allegation that one of the Jury 'Commissioners, Mr. Saint George Hines, who selected the Grand Jury and Petit Jury venires, had vacated his office in that he had moved his residence from East Baton Rouge to Pointe Coupee Parish.
 

 The motion to quash was properly overruled by the judge, as Mr. Hines’ title to the office of Jury Commissioner could not be challenged collaterally. He was in possession of the office and, having been duly appointed and qualified by taking the prescribed oath, he was a de facto, if not a de jure, commissioner, entitled to perform the functions of his office. It has been repeatedly held that the legality of the title of an officer and his authority to act is not a proper subject of inquiry on a motion to quash an indictment. State v. Moreau, 153 La. 671, 96 So. 527; State v. White, 156 La. 770, 101 So. 136; State v. Phillips, 164 La. 597, 114 So. 171; State v. Foster, 164 La. 813, 814, 114 So. 696 and State v. Broussard, 202 La. 458, 12 So.2d 218. The argument of defense counsel that an exception should be made to this rule, when the officer removes his residence to another parish and thus vacates his office, is not impressive.
 

 Bills Nos. 2, 3 and 4 were reserved to the judge’s action in overruling challenges
 
 *771
 
 for cause of'three prospective jurors during their voir dire examination thereby causing appellant to use three peremptory challenges on these jurors. By reason of the exhaustion of all peremptory challenges before the qualification of the twelve jurors, appellant alleges that he was forced to accept an obnoxious juror which, under Article 353 of the Code of Criminal Procedure (R.S. 15:353), is ground for reversal, if the denial by the judge of the challenges for cause was erroneous.
 

 The challenges for cause of the prospective jurors involved in these bills resulted from the answers given by them to questions propounded by counsel for appellant as to whether the jurors, in case the evidence sustained appellant’s guilt, could bring in a qualified verdict, that is, one which would not carry the death penalty. These questions of counsel were obviously patterned from our decisions in State v. Henry, 196 La. 217, 198 So. 910 and State v. Jackson, 227 La. 642, 80 So.2d 105, wherein it was held that it was reversible error for the trial judge to refuse to allow defense counsel to ask prospective jurymen on their voir dire examination whether they had any conscientious scruples against imposing a qualified verdict in a capital case in the event the evidence convinced them of the guilt of the accused.
 

 In the Henry case we remarked that, since Article 352 of the Code of Criminal Procedure accords the State the right to have a juror tendered in a capital case excused for cause when he has conscientious scruples against the infliction of capital punishment, it was only fair and just that the accused be permitted to inquire of the prospective juryman whether he had any prejudice against rendering a qualified verdict or if he only favored the death penalty in the event of conviction.
 

 . Unlike the Henry and Jackson cases, the judge in the case at bar afforded defense counsel the privilege of fully examining the prospective jurors with respect to their beliefs both as to capital punishment and as to qualified verdicts. But, after considering the statements given by these jurors in response to the questions propounded by defense counsel and himself, the judge, being of the opinion that no one of the jurors entertained any prejudice against returning a qualified verdict in the event appellant was found guilty, overruled the challenges for cause.
 

 In reviewing the judge’s ruling it is well to observe preliminarily that, under our law, the excusing of petit jurors for cause is within the discretion of the trial judge. Article 345, Code of Criminal Procedure (R.S. 15:345); 1 Marr’s Criminal Jurisprudence, 701, Sec. 462; State v. Kifer, 186 La. 674, 173 So. 169, 110 A.L.R. 1017 and State v. Hoover, 203 La. 181, 13 So.2d 784. Hence, the question presented under these bills is whether the judge
 
 *773
 
 abused his discretion in denying the challenges for cause.
 

 An examination of the per curiams of. the judge on Bills Nos. 2, 3 and 4, in connection with the questions propounded to,. and the answers of, the prospective jurymen, discloses that the three jurors challenged, Mr. Stephen F. Arbuthnot, Mr., George D. Landry' and Mr. A. A. Gaines, • experienced some difficulty in comprehend- • ing the meaning of a qualified verdict and the exact nature of the information which defense counsel sought to elicit. For example, Mr. Arbuthnot was asked “If the circumstances justified, even though you felt that the accused was proven guilty, could you bring in a qualified verdict, which would not carry the death penalty ?” • In reply, the juror asked “If there was evi- ■ dence that he was guilty?” Thereupon the judge, evidently realizing that the juryman did not understand the meaning of a qualified verdict, explained to him that it was within his discretion to vote for a verdict of guilty without capital punishment if he. so desired. Defense counsel then asked him “Could you do that?”, to which the juryman replied “Yes, sir, if the majority —”. At this point the judge again interrupted, telling the juryman that the majority had nothing to do with it “It must be your verdict”. Counsel then propounded the question and the juryman queried “Just what is a qualified verdict?”. Upon coun- ■ sel’s explanation that it was a verdict without capital punishment, the juryman answered that, if he thought appellant was guilty, he could not vote for a qualified verdict. Whereupon, the judge again explained to the juror that the law gave him the right to return a qualified verdict and, after further discussion, he was asked whether the only verdict he could render in the case would be a capital verdict even though he had been told that “you could qualify your verdict”, to which he replied “I could if the evidence was weak enough. In other words, if I wasn’t satisfied that he was guilty”. Following this answer, the judge said:
 

 “Q. That is not the point at all. You miss the whole point. The man can be guilty but the law says even though you think he is guilty that you can qualify your verdict if you want to and keep him from going to the electric chair. You can do that if you want to, even though he is guilty, and he is asking you if you could do that; he is not asking you if you would do it, he is asking you if you could do it?”
 

 To which the juror replied:
 

 “A.
 
 Well, I could do it, yes sir.”
 

 In holding that he did not consider the juror prejudiced against a qualified verdict, the judge observed that there was considerable interchange by counsel in his questions to the juror as to what he “would do” and what he “could do”. This
 
 *775
 
 no doubt served only to confuse the mind of the juror.
 
 In fact, the use of the verbs “would” or ,could" in examinations of this sort are not strictly correct for it is highly improper to ask a juror if he would act in such a way under certain circumstances as such a question obviously endeavors to commit him in advance as to his verdict. And, to ask him whether he could do a particular thing would seem to require him either to state whether he has or has not the right to do it or whether he is able to do it, which again could tend to commit the juror as to his verdict before he hears the evidence.
 
 The pertinent inquiry is not what the juror would or could do but whether he has such a prejudice against the type of crime charged that he is conscientiously opposed, in the event of a finding of guilt, to a verdict other than one with capital punishment.
 

 After a careful consideration of Bill of Exceptions No. 2, we conclude that the judge did not abuse his discretion in refusing appellant’s challenge of Mr. Arbuthnot for cause.
 

 Bills Nos. 3 and 4, pertaining to prospective jurors Landry and Gaines, are likewise not meritorious. Mr. Landry experienced the same difficulty as Mr. Arbuthnot with respect to the questions propounded anent qualified verdicts. However, after explanation by the judge, he finally stated that whether or not he would vote for a qualified verdict, in the event of guilt, depended upon the evidence. This answer fully justified the refusal of the challenge for cause.
 

 Insofar as Mr. Gaines is concerned, the record does not contain his testimony as it is shown that the recording machine did not correctly report his examination. However, the judge informs us in his per curiam that Mr. Gaines did not say that he could not qualify his verdict.
 

 When the district attorney was making his opening statement, he informed the jury in some detail of appellant’s written confession and what it purportedly contained. Counsel for appellant objected to such a detailed reference to the confession and moved for a mistrial. The trial judge overruled the motion and simultaneously instructed the jury that the opening statement could not be considered as evidence in the case. Counsel then reserved Bill No. 5 and they insist that the judge committed fatal error despite the fact that the confession was admitted into evidence at the trial.
 

 There is no substance in the bill for a number of reasons. However, it suffices to say that no prejudice resulted to appellant by the making in the opening statement of a detailed reference to a written confession which is subsequently admitted in evidence. State v. Cannon, 184 La. 514, 166 So. 485; State v. Wilson, 217 La. 470, 46 So.2d 738 and State v. Jones, 230 La. 356, 88 So.2d 655.
 

 
 *777
 
 During the cross-examination of the prosecutrix, she was asked by defense counsel whether she had made a written statement to police officers immediately after the commission of the offense. When she replied in the affirmative, counsel moved for the production of the statement. The district attorney voluntarily offered to comply with counsel’s request but only on condition that the statement first be read in its entirety to the jury. Counsel, not being apprised of what the statement contained, declined the district attorney’s conditional offer. The trial judge thereupon refused to order the production of the statement for inspection purposes and counsel reserved Bill No. 6.
 

 In stressing this bill, counsel argue that a statement given by a witness immediately after a crime, when the facts are still fresh in the mind of the witness, should be more accurate than the testimony of the same witness several months later and, for this reason, appellant should have been given an opportunity to examine the written statement of the prosecuting witness and use it, if necessary, for purposes of impeaching the witness. No authority is cited by counsel for this proposition but some reliance is placed on the case of State v. Broussard, 217 La. 90, 46 So.2d 48.
 

 It is difficult to see how counsel can get any comfort from the Broussard case where it was held that a similar bill was without merit for many reasons but principally because defense counsel admitted that he had a copy of the statement of the witness in his file.
 

 We have undertaken an independent research on the question posed by this bill and find that the most recent authorities have declared, without qualification, that an accused is not entitled to production of any written statement of a state witness in the hands of the district attorney or the police department. State v. Vallery, 214 La. 495, 38 So.2d 148; State v. Williams, 216 La. 419, 43 So.2d 780 and State v. Labat, 226 La. 201, 75 So.2d 333.
 
 [1]
 

 However, in State v. Hodgeson, 130 La. 382, 58 So. 14, decided in 1912, the court flatly held that a written statement made by the prosecuting witness should have been produced and made available to the defense for use for purposes of impeach
 
 *779
 
 ment. But, later in the same year, in State v. Simon, 131 La. 520, 59 So. 975, where counsel for the accused called on the State to produce the written testimony of a state witness given in the private office of the district attorney after said witness had admitted giving such a statement under cross-examination, the court, without referring to the Hodgeson case, held that the request was properly refused since the sole purpose for which counsel sought the statement was for impeaching the witness and that such purpose could not be pursued as no proper foundation had been laid by a showing that the statement was contrary to the sworn testimony of the witness. Similarly, in State v. Bankston, 165 La. 1082, 116 So. 565, where the accused’s co-defendant testified that he had made four statements concerning the robbery involved, it was held that defense counsel could not require the district attorney to produce the first statement, which was made under oath, for the purpose of cross-examination since it was not admissible as primary evidence for or against the accused nor for purposes of impeachment because no proper foundation had been laid.
 

 Thus, it appears that State v. Hodgeson stands alone in our jurisprudence and must be considered as overruled by the later cases which are directly contrary thereto. On the other hand, the pronouncements in the Vallery, Williams and Labat cases that the defense is not entitled to production of any written statement of a witness in the hands of the district attorney, appear to be too broad and it seems to us that the exception recognized in the Simon and Bankston cases should obtain in instances where a proper foundation for the impeachment of the witness has been laid — for example, when the witness admits on the stand that his prior statement is contrary to his testimony.
 

 The Supreme Court of the United States, in the comparatively recent case of Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447,
 
 [2]
 
 noted such an exception and it appears to be consonant with fairness and justice-that the trial judge order production of a prior statement of a witness under the circumstances above mentioned. But there were no circumstances in the instant case from which production of the prior statement of the prosecutrix became essential and no attempt was made by defense counsel to lay the foundation to show that her written statement was contrary in any respect to her testimony given at the trial. Indeed, in making the request for production of the statement, counsel, as observed in State v. Simon, supra [13.1 La, 520, 59 So. 976], “* * * were merely on a fishing expedition” and the judge correctly denied the request.
 

 
 *781
 
 Bill No. 7 was reserved to the ruling of the judge in admitting the oral and written confessions of appellant in evidence over the objections of counsel that the confessions were not freely and voluntarily given. Our law provides that, before any confession can be introduced in evidence, the State must affirmatively prove that it was freely and voluntarily given and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Articles 451 and 452, Code of Criminal Procedure (R.S. 15:451, 452) and Section 11 of Article 1 of the Constitution of 1921. And it is established by our jurisprudence that, before what purports to be a confession can be received in evidence, it must be shown by proof which convinces beyond a reasonable doubt that it is voluntary. State v. Wilson, 214 La. 317, 37 So.2d 804; State v. Robinson, 215 La. 974, 41 So.2d 848; State v. Honeycutt, 216 La. 610, 44 So.2d 313; State v. Green, 221 La. 713, 60 So.2d 208 and State v. Michel, 225 La. 1040, 74 So.2d 207.
 

 Two days after the commission of the offense, appellant was arrested by Deputy Sheriff Reeves and Lieutenant Henderson of the East Baton Rouge Police Force. He was placed in custody at 8:15 a. m. and orally confessed at about 10:30 that night. A written confession was given shortly thereafter which was signed by appellant at 12:10 a. m. The arresting officers declared that appellant was considered a likely suspect for the reasons that he had previously been convicted on a charge of attempted rape of a white girl; that he lived in the vicinity where the crime was committed and that, when they questioned him at his home, he gave an untruthful statement as .to his whereabouts on the evening of the occurrence of the crime. In addition, the officers found in his pocket a red bandanna handkerchief,
 
 [3]
 
 which the prosecutrix had told officers was used by her assailant to force her into a ditch or gulley near the street where the act took place.
 

 After his arrest, appellant was brought to the Parish Court House where he was questioned until approximately 11:30 a. m., when he was placed in a separate cell from the other incarcerated persons, which was the regular procedure used in criminal investigations. After being given his noon meal, appellant was taken, at approximately 1:30 p. m., to the crime laboratory at State Police Headquarters where he took three lie detector tests, all of which were inconclusive. While at the State Police laboratory, the prosecutrix attempted to identify appellant but admitted that she was not sure that he was the man. Between 4:00 and 4:30 p. m., appellant was returned to the Parish Prison and given the evening
 
 *783
 
 meal. He was not again questioned until 7:30 or 8:00 o’clock that same evening and, during all periods of questioning, he was permitted to smoke and drink coffee. He was also told by the officers that he was entitled to counsel, if he so desired.
 

 After being questioned for a couple of hours that evening, or at about 10:30 o’clock, appellant orally confessed to having attacked the prosecutrix. The police officers then asked him if he would take them to the scene and reconstruct the crime, which he consented to do. He was taken in a police car with the two investigating officers and another officer and appellant directed the driver to the scene of the crime where he reconstructed the incident from the time he first sighted his victim walking alone toward her home to the time he attacked her after following her for some three blocks. The victim’s testimony completely corroborated appellant’s statement to the officers.
 

 When he was brought back to the parish jail, appellant agreed to have his confession recorded in writing and he thereupon gave a detailed written statement which was taken down in longhand by one of the officers. Appellant read the statement and then signed it at about 12:10 that night.
 

 All officers having anything to do with the giving of the confessions were produced by the State and they testified that appellant was not subjected to any sort of violence, threats, nor was he given any promises and that the confession was entirely voluntary on his part.
 

 Appellant took the stand out of the presence of the jury for the limited purpose of traversing the testimony given by the officers in laying the foundation for the admission of the confessions in evidence. In his testimony, he admits that he was not subjected to any physical violence nor were third degree methods practiced by the officers. However, he suggests in his statement that the officers tried to trap him and that Lieutenant Henderson told him that he might as well confess as the boy (a nephew of appellant) told him everything they wanted to know. While his testimony is somewhat vague as to his reason for confessing (he says, in speaking of Lieutenant Henderson, “I wouldn’t exactly say he threatened me”), he declares that the officers told him that he was going to tell them something before he left the room and indicates that, inasmuch as he had been beaten by some officer (whose name he does not know) when he was charged with attempted rape of another white girl, he thought that he might be beaten in the present case if he did not confess.
 

 It is manifest that appellant’s testimony does not cast any serious doubt as to veracity of the police officers’ statements that the confessions were entirely free and voluntary. Actually, he does not even contradict their evidence in any major particular, his reason for confessing being apparently
 
 *785
 
 brought on by a belief that he would receive the same treatment from the officers that he says was administered nine years previously while under arrest on a similar charge.
 

 In addition to this, the circumstances surrounding the making of the confessions, which are of great importance in cases of this sort, see Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246, do not show any undue pressure against appellant’s power of resistance, either by reason of the point of time involved, the nature of appellant’s incarceration or the questions asked. Under such conditions, we think the trial judge was correct in his ruling that the confessions were admissible.
 

 Bill No. 8, which was reserved to the overruling of appellant’s motion for a new trial, presents no question of law for review and is merely a reiteration of the complaints which we have already considered. And, Bill No. 9, which was taken to the overruling of a motion in arrest of judgment, is in the same category, as it relates only to the admission of the confessions, the overruling of the motion to quash the indictment and the overruling by the judge of numerous objections of defense counsel.
 

 The conviction and sentence are affirmed.
 

 HAMITER, J., concurs in the decree.
 

 [1]
 

 . In State v. Dorsey, 207 Da. 928, 22 So.2d 273, it was held that the accused was entitled to a pre-trial inspection of a written confession alleged to have been made by him. Nevertheless, it was there pointed out that the ruling would be extended no further than to written statements of the accused himself and that pre-trial inspection would be denied of written statements of witnesses or police reports in the hands of the district attorney, sheriff, or police department. This rule was applied in State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Martinez, 220 La. 899, 57 So.2d 888; State v. Haddad, 221 La. 337, 59 So.2d 411 and State v. Shourds, 224 La. 955, 71 So.2d 340.
 

 [2]
 

 . In this connection, see Annotations 52 A. L.It. 207, 165 A.L.R. 345; 8 Wigmore, “Evidence” Sec. 2224 (3rd Ed.) and 1955 Supplement.
 

 [3]
 

 . Later, lipstick of the type worn by the victim was found to be the same as that on the handkerchief.