Emile WESTON, Jr., Appellant,

v.

Maurice SIGLER, Warden of the Louisiana State Penitentiary, Appellee.

No. 17309.

United States Court of Appeals
Fifth Circuit.

Jan. 16, 1959.

Joel B. Dickinson, Baton Rouge, La., for appellant.

Teddy W. Airhart, Jr., Asst. Atty. Gen., Jack P. F. Gremillion, Atty. Gen., William C. Bradley, Asst. Atty. Gen., J. St. Clair Favrot, Dist. Atty., Baton Rouge, La., George M. Ponder, First Asst. Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

PER CURIAM.

Weston was convicted of aggravated rape in the district court and sentenced to death by electrocution. The Louisiana Supreme Court affirmed the sentence and Weston then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Louisiana.

The district court denied the petition on the ground that Weston had failed to exhaust his state remedies prior to seeking federal relief. We affirm the district court. 28 U.S.C.A. § 2254;[1] Johnson v. Wilson, 5 Cir., 1942, 131 F.2d 1; Morton v. Henderson, 5 Cir., 1941, 123 F.2d 48.

The order of the district court, staying the electrocution of Weston until remedies of appeal have been exhausted, will, however, remain in effect. 28 U.S.C.A. § 2251. The Court issues herewith a certificate of probable cause.[2] 28 U.S.C.A. § 2253.

Affirmed.

1. 28 U.S.C.A. § 2254 provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

2. The record before this Court did not contain, in terms, a certificate of probable cause from the district judge. The actions of the district judge, however, in effect amount to issuance of such a certificate. These actions are: (1) the issuance of a stay order "to remain in effect until remedies on appeal have been

**520**

CAMERON, Circuit Judge (dissenting).

The Per Curiam opinion assumes that the District Court denied the Petition for Habeas Corpus because Weston had failed to exhaust his remedies in the State Courts of Louisiana, citing and quoting the language of 28 U.S.C.A. § 2254. In my opinion, the District Court should have granted the motion of the State of Louisiana to dismiss the application and should have declined to stay the execution because of lack of jurisdiction.

Its power to act, entirely statutory, was based upon Part VI, Chapter 153, of the Judicial Code, 28 U.S.C.A. § 2241–2254, inclusive, pertinent portions of which read:

> "The writ of habeas corpus shall not extend to a prisoner unless—
>
> "(3) He is in custody in violation of the Constitution or laws or treaties of the United States * * *." 28 U.S.C.A. § 2241(c) (3).
>
> "An application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *shall not be granted unless it appears* that the applicant has exhausted the remedies available in the courts of the State * * *." 28 U.S.C.A. § 2254, [emphasis supplied.]

The jurisdiction conferred on the court below, therefore, was conditioned upon a showing that the applicant had exhausted state remedies. No such showing was made.

The same chapter provides that the application "shall allege the facts concerning the applicant's commitment or detention * * *." 28 U.S.C.A. § 2242. One thing necessary to be shown by the application is that applicant has petitioned for writ of habeas corpus in the state court and has exhausted the state court remedy by pursuing it through the state appellate courts and by applying for certiorari to the Supreme Court of the United States.[1]

The facts alleged in the application set forth three grounds as forming the alleged basis of violation of constitutional rights; that he was not guilty of aggravated rape because the victim submitted without protest,[2] that the confession

exhausted"; (2) the granting of leave to appeal in forma pauperis, with the provision that the United States pay the cost of transcript. The State of Louisiana has not raised any question as to the issuance of a certificate of probable cause. To eliminate any uncertainty on this point, a majority of the Court, Judge Cameron dissenting, issue herewith a certificate of probable cause.

1. Professor Moore thus summarizes the requirement in his Commentary on the Judicial Code at page 446: "It is * * clear that where the applicant is in custody pursuant to a state court judgment a federal habeas corpus proceeding is not warranted * * * unless one of the following three things is made to appear:
"(1) the applicant has exhausted the available state remedies, as exhaustion is defined in the second paragraph of § 2254; or
"(2) there is an absence of available State corrective process; or
"(3) the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

2. As to which the Supreme Court of Louisiana, State v. Weston, in its opinion reported at 232 La. 766, 95 So.2d 305, 306, stated: "Shortly before midnight on May 27, 1956, a 35 year old white female, while walking on North Baton Rouge Avenue to her home in Baton Rouge following a visit to a friend, was seized from behind by a Negro man who threw a red bandanna handkerchief around her mouth and dragged her down alongside a slough, or drainage canal, which runs under the street at this particular location. Thereupon the man began choking the woman and told her that she knew what he wanted and that, if she did not let him have it, he would kill her. She attempted to scream but her outcries were muffled by the red bandanna handkerchief which the man had placed over her mouth and she finally submitted and the man raped her. After consummating the act, the man again threatened her with death if she reported him. The victim then ran to her home and notified the police. * * *"

obtained from applicant was not, under federal decisions, admissible against him and was not sufficient to convict him without corroboration; and that the laws of Louisiana were such as to require prepayment of costs to acquire a complete transcript of the evidence, with which requirement appellant was not able to comply because of his poverty, so that he could not present his case fully to the Supreme Court of Louisiana.

It is clear that each and all of these questions were such that appellant had "the right under the law of the state to raise" by available procedures. The availability of such remedies in the state courts of Louisiana is not seriously questioned in the argument before us. The burden of that argument is rather that it would do no good to pursue the state remedies because the Louisiana Courts would not fairly protect applicant's rights. That argument is pitched upon the heinous heresy, often espoused, that all morality and integrity are lodged in federal functionaries, none in the state officials who live across the street. That idea found temporary lodgment in § 2254 as it was drafted by the Revisers and passed by the House of Representatives,[3] which contained, the language: "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is no adequate remedy available in such courts or *that such courts have denied him a fair adjudication of the legality of his detention under the Constitution and laws of the United States.*" [Emphasis supplied.] The italicized language was excised from § 2254 in the substitute proposed by the Judicial Conference, which was accepted by the Senate and acquiesced in by the House.[4]

The application before us contains the bald averment that "Relator avers that he has exhausted his legal remedies in the courts of the State of Louisiana," though it does not set forth any *fact,* as is required by the language of § 2242 quoted supra, beyond the statement that applicant had applied to the Louisiana State Pardon Board for a commutation of sentence.

This abstract averment was not sufficient to warrant intervention by the court below in state criminal procedures. Such is the holding of the Supreme Court in Darr v. Burford, Warden, 1949, 339 U.S. 200, 218, 70 S.Ct. 587, 94 L.Ed. 761:

> "A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to *allege and prove primary facts,* not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused. The petitioner has the burden also of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."[5] [Emphasis added.]

In Darr, the Supreme Court settled the apparent conflict in its former decisions,[6] holding that Congress had, by the passage of § 2254, placed in statutory form the doctrine of Hawk, epitomizing the important and basic underlying rea-

---

3. Moore's Commentary, p. 444.

4. Moore's Commentary, pp. 444–446.

5. That language was used by the Supreme Court in a case where the applicant had pursued state habeas corpus remedies through the highest court of Oklahoma, and had failed only to pursue his state remedies further by petition for writ of certiorari to the Supreme Court of the United States.

6. E. g., Ex parte Hawk, 321 U.S. 114, 116–117, 64 S.Ct. 448, 88 L.Ed. 572; Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340, 79 L.Ed. 791; White v. Ragen, 324 U.S. 760, 767, 65 S.Ct. 978, 89 L.Ed. 1348; House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; and Wade v. Mayo, 334 U.S. 672, 679, 68 S.Ct. 1270, 92 L.Ed. 1647.

son behind § 2254 in these words (339 U.S. at page 217, 70 S.Ct. at page 597):

"The sole issue is whether comity calls for review here before a lower federal court may be asked to intervene in state matters. We answer in the affirmative. Such a rule accords with our form of government. Since the states have the major responsibility for the maintenance of law and order within their borders, the dignity and importance of their role as guardians of the administration of criminal justice merits review of their acts by this Court before a prisoner, as a matter of routine, may seek release from state process in the district courts of the United States. It is this Court's conviction that orderly federal procedure under our dual system of government demands that the state's highest courts should ordinarily be subject to reversal only by this Court and that a state's system for the administration of justice should be condemned as constitutionally inadequate only by this Court." [7]

Even assuming that the court below might have been misled, by the wholly unwarranted statement in the application that legal remedies in the courts of Louisiana had been exhausted, into issuing the citation against the warden and entering the order "that the electrocution of the petitioner be stayed pending further order of this Court," it knew, less than a week later from the motion to dismiss, from the return of the warden, and from the statements of counsel who argued the case before it, that applicant had not taken one step towards pursuing state habeas corpus remedies.[8] The return categorically denied every averment of fact and statement of law in the application and, under the plain provisions of § 2248 [9] of the Chapter relied upon as furnishing jurisdiction for this action, the allegations of the return are conclusive if not traversed. There was no traverse here and there was no evidence, so that the court below had no alternative but to accept as true the allegations of the return. Manifestly it did so because it "denied" the application and declined to issue a certificate of probable cause.[10] In a proceeding so palpably frivolous, I think the court below ought to have granted the motion to dismiss for want of jurisdiction and to have set aside the stay order.

Such a course comports, not only with settled principles of law under the authorities discussed, but is supported by appellate court decisions rendered since Darr v. Burford. A good example is the decision of the Court of Appeals for the Ninth Circuit in Reese v. Teets, 1957, 248 F.2d 147, 149, a case indistinguishable, in my opinion, from this one.

There, the district court had *denied* the application of Reese for habeas corpus and his motion for stay of execution set for the next day. A judge of the

---

7. In its reasoning preceding the foregoing quotation the Supreme Court (339 U.S. at page 212, 70 S.Ct. at page 594) quoted from a statement by Judge John J. Parker, who served as Chairman of the Judicial Conference of Senior Circuit Judges, Committee on Habeas Corpus: " * * * The thing in mind in the drafting of this section was to provide that review of state court action be had so far as possible only by the Supreme Court of the United States, whose review of such action has historical basis, and *that review not be had by the lower federal courts, whose exercise of such power is unseemly and likely to* breed dangerous conflicts of jurisdiction. * * " [Emphasis added.]

8. Counsel for both of the parties stated in the oral argument before us that applicant had, subsequent to entry of the order now before us, instituted habeas corpus proceeding in a district court in Louisiana where it was still reposing; but all parties freely admitted that no step whatever had been taken in a Louisiana Court prior to the entry of the order appealed from.

9. "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

10. As provided by § 2253.

Court of Appeals granted a stay, but the Court vacated this order, commenting on the fact that the district court recognized that Reese "in his application failed to allege, in compliance with the requirement of 28 U.S.C. § 2254, that he had exhausted his state remedies \* \*" and had taken judicial notice of the status of the proceedings in the state court. Upholding the contention of Warden Teets that the judgment of the District Court was void for want of jurisdiction because of failure to comply with § 2254, the Court of Appeals said:

> "The United States District Court has no power to stay the execution of judgment of a state court save as an incident to the exercise of its jurisdiction in habeas corpus. As stated in Covell v. Heyman, 111 U.S. 176, at page 182, 4 S.Ct. 355, at page 358, 28 L.Ed. 390:

> " 'The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, is something more. It is a principle of right and of law, and therefore of necessity.'

> "*Since the district court lacked jurisdiction to entertain Reese's application for the writ or the petition for a stay of execution,* our order staying execution is set aside, the district court's judgment is reversed and the case remanded to the district court and that court ordered to dismiss his application." [Emphasis added.]

That, I think we ought to do here. Unless litigants are to be permitted, by the mere expedient of including within their applications vague abstract statements having no foundation in fact and no possibility of support, to arrest or nullify the important criminal procedures of state courts, this entire proceeding has been since its inception without any show of merit or semblance of jurisdiction. I do not think that the hand of the state should be stayed on grounds so baseless, furnishing one more manifestation of the tendency to exalt federal power and debase the states to which alone, under our constitutional system, the power belongs. Therefore, I dissent.