337 So.2d 446 (1976)
STATE of Louisiana
v.
Johnny BOLTON.
No. 57639.
Supreme Court of Louisiana.
September 13, 1976.
J. Hunter Bienvenu, Gretna, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, *447 Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Gretna, for plaintiff-appellee.
CALOGERO, Justice.
Defendant Johnny Bolton was convicted of distributing heroin and sentenced to serve a term of life imprisonment. He appeals and assigns seven bills of exception.
The background facts in this case are these. A federal narcotics agent Bernard Harry, working with the Jefferson Parish Sheriff's Office for the purpose of making narcotics purchases, purportedly bought four "papers" of heroin from Johnny Bolton for $48.00. The state's case consisted of just five witnesses: two psychiatrists whose testimony was principally that the defendant was sane shortly prior to and at time of trial;[1] the director of the Southeastern Criminal Laboratory (apparently a division of the Jefferson Parish Sheriff's Office) who testified that the substance purchased by the narcotics agent was heroin; the narcotics agent who made the buy (Agent Harry); and a Jefferson Parish Sheriff's deputy William Renton, who was working with the federal narcotics agent and was one of at least several corroborating or surveillance officers. Deputy Renton said that in the vicinity at the time of the buy were Harry, Agent Bob Morris, Agent Larry Carver of the Drug Enforcement Administration, Deputy Ronnie Kignel and an assistant group supervisor from the federal regional office. (Deputy Renton's report indicates that this man was Agent M. Biffel). Agent Bob Morris, who was said by the prosecutor to be a shadow or a backup man for Bernard Harry, was not called to testify even though the prosecutor indicated in his opening statement that he intended to call him. Nor were Carver, Kignel or Biffel called to testify at the trial.
Agent Harry testified that on January 29, 1974[2] his assignment was to purchase heroin from known dealers in the area of Charlie's Blue Room, a commercial establishment at the intersection of Jefferson Highway and Atlanta Street in the Parish of Jefferson. His first contact was a male who told him that there was an individual selling heroin from a particular apartment close to Charlie's Blue Room. He proceeded to the area and came upon defendant and another black male walking in the direction of an apartment dwelling near, or next to Charlie's Blue Room. He approached them, expressed an interest in purchasing four "things." Defendant told him it would cost $48.00. Agent Harry gave the man $50.00, got two dollars change and four foil packages which turned out to contain heroin. He testified this occurred outside of the apartment building near or on a stairway between the apartment and Charlie's Blue Room. He also testified, as did Deputy Renton, that at the time, there were other agents from his office as well as from the Jefferson Parish Sheriff's Office in the vicinity of Charlie's Blue Room.
Deputy Renton testified that he and Deputy Bob Morris followed Agent Harry and observed them from about 400 feet away with binoculars. He observed defendant make an exchange of some sort with Agent Harry on the stairway beside an apartment building. He observed Harry and defendant make the exchange during a conversation which lasted about five minutes. He was rather distant, using binoculars, and couldn't be sure just what was being exchanged, he said, but it did appear that an exchange of some sort was made. Then he saw Harry leave the area in his vehicle.
Officer Renton testified that in a drug purchase case at least two reports are made. The agent who purchases the narcotics does what is known as a "purchase report," or a "buy report," and the agents who are on surveillance do a "corroboration report." He stated that Agent Harry did the purchase report and he and his partner, Deputy Kignel, did a corroboration report.
*448 Prior to trial the assistant district attorney in charge of the prosecution apparently made his entire file available to defense counsel who made extensive notes of his own, or a synopsis of the contents of one or both of the reports. Counsel was therefore aware that in Deputy Renton's report there appeared a statement that at the given time and place, Harry was observed to enter Apartment 16 of the building and thereafter to leave. The report indicated under "physical description" that the vendor was not observed by the corroborating officers during this transaction.[3]
There was other information in one of the reports of interest to defense counsel and possibly inconsistent with testimony given at the trial. For instance, in Agent Harry's purchase report the "physical description" of defendant was made as follows: "Jerry Lemar Bolton a/k/a Johnny, is a Negro male 19 years old, born March 7, 1954. He is 5'8" tall, weights 150 pounds, has black hair and brown eyes. Bolden is assigned JPSO # 43264." The foregoing apparently did not correlate with defendant's physical appearance at trial (although this is not absolutely clear from the record), and Deputy Harry testified that the 26 year old defendant, Bolton, was about 24 or 25 years old.
Because defense counsel knew of these discrepancies, he wished to impeach Renton's testimony. Particularly (as relates to assignment number three) did he wish to traverse testimony of Deputy Renton, which had been that he had observed the conversation and exchange on the stairway, with Deputy Renton's earlier report to the effect that the transfer had taken place inside of the apartment and out of his view.[4]
Defense counsel on cross-examining Deputy Renton, after having the agent concede that either he or his partner had prepared a surveillance report, stated "Well, I am going to refer you to a synopsis of that report _ _ _" At that point the prosecutor succeeded in having the trial judge remove the jury. He thereupon protested that he presumed counsel's next question would be whether the agent had a written report, and might he see it. The prosecutor further protested that counsel was not entitled to that, that counsel was not entitled to cross-examine the deputy upon the report. He further indicated that he did not think it proper under cross-examination "to pick apart the synopsis of the report."
Counsel for the defense pointed out that the witness testified that he saw the transaction take place and that this was inconsistent with what appeared in the report. At that point the court advised counsel for defendant that he would be allowed to ask the witness whether the buy was made inside or outside of the apartment, but insofar as the synopsis made of the report by defense counsel, the court said it was not "going to let counsel refer to that." When defense counsel thereupon stated that for the purpose of impeaching the witness he would like to use the information that he had obtained, the court sustained the state's objection (apparently referring to the prosecutor's earlier protestation) and followed with the observation that "you are not entitled to that report." Responding to the court's ruling, defense counsel thereupon abandoned his line of questioning and did not use in further examination of the witness the information contained in his synopsis which he knew to be the information contained in the officer's report.
It was to this latter ruling of the court that counsel for defendant reserved bill of exception number three. He contends in the bill that in effect the court erred in not *449 allowing him to refer to the content of the agent's report in cross-examining him for the purpose of impeachment.
The state's position and that of the trial court in its per curiam is that defendant had not laid the proper foundation for obtaining the report for use in impeaching the witness because he had not shown that one or more of the material statements therein were contrary to the sworn testimony of the witness, citing State v. Nails, 255 La. 1070, 234 So.2d 184 (1970); State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969); State v. Cooper, 249 La. 654, 190 So.2d 86 (1966); State v. Weston, 232 La. 766, 95 So.2d 305 (1957).
State v. Weston, supra is the lead case on the subject in recent years. Indeed in that case this Court did say that the trial court should not order production of a prior statement of a prosecution witness for use in cross-examination unless it is first shown that the witness' statement was contrary in any respect to her testimony given at trial. This jurisprudence still prevails, although not without some moderate criticism, (See 18 La.L.Rev. 350 (1958) cited at Pugh, Louisiana Evidence Law, at 686 (1974)) and notwithstanding expression of a minority view in this Court. (See the concurring opinion of my brother Tate, joined in by Justice Barham and author herein, in the case of State v. Babin, 319 So.2d 367, 372 (La. 1975).)[5]
One problem with limiting trial production of the witness' prior statement to instances when the witness admits the inconsistency on the stand is that under R.S. 15:493 the prior statement cannot be introduced into evidence for purposes of impeachment once the witness has admitted the statement was made. Because of this "the act of laying a sufficient foundation would render the statement useless as evidence." 18 La.L.Rev., supra at 688.
We note that there also exists in Weston a statement to the effect that production should perhaps be required where there are circumstances indicating that such production is essential.
Considering Weston's requirement either that there be a showing that the prior statement was contrary in any respect to the witness' testimony, or that circumstances need be shown to exist which indicate that production is essential to the defendant, it might well be argued that defense counsel's assertion in court, relative to the content of the officer's report as evidenced by his own synopsis, was in effect a sufficient showing warranting production of the prior inconsistent statement.[6]
Even assuming, however, that the record in this case does not adequately establish the requisite Weston foundation of either established inconsistency or circumstantial necessity, and even assuming that a majority of the present court is not prepared to adopt the views of the concurring Justices in State v. Babin, supra, there is nonetheless evident error in the trial court's *450 ruling, for this defendant was denied the opportunity which, even under the stringent requirements of Weston and Nails, is available to him, not of having the witness' report produced but simply of using the information known by him to be part of the deputy's report.[7]
When the trial court broke off his line of questioning of the witness and prevented his using the information he had obtained prior to trial, counsel was denied the right to ask such proper and appropriate questions as whether the witness had made a contrary statement in his report.
It is one thing to refuse to require the witness to produce his report at trial. It is entirely another to deny defendant the right to refer to his own synopsis, and indirectly to the content of the officer's report, in laying the foundation for impeachment.
Reduced to simpler terms, the witness had testified on a material point contrary to what he had earlier said in his report; defendant's counsel was aware of this because he had read the officer's report; yet, by the court's ruling, he was denied the right to use that knowledge, that pertinent information, in interrogation of the witness in an effort to impeach his testimony.
Whatever the merit of the court's ruling that the report should not be produced, it can hardly be denied that it was error to gag counsel in cross-examination by preventing an effort to impeach the witness by using information which he had fortuitously acquired prior to trial.
Nor is the error cured because there exists or may exist a plausible explanation as to why the contradiction or inconsistency in the officer's testimony and his report had occurred.[8] The appropriate arbiter or judge of that inconsistency and the reason therefor, was the trial jury. It is not for us to say that the jury would have convicted this defendant even had he been permitted through counsel to attempt impeachment and to produce before the jury the inconsistency in the agent's recollections.
The simple fact is that defendant's constitutional right to confrontation by appropriate cross-examination was improperly curtailed in a material and substantial way. See Davis v. Alaska, supra at note 5.
Assignment of error number three therefore has merit.
Because we find merit in bill number three, we deem it unnecessary to consider the remaining bills, including the closely-allied Bill number four which was directed at the court's refusal to order production of the agent's report to aid defendant in his effort to impeach testimony of the witness because of alleged inconsistencies between the agent's testimony and his report relative to the physical characteristics (size, age, weight, etc.) of the heroin vendor.
*451 For the foregoing reasons the conviction and the sentence is reversed, and the case is remanded for retrial.
DENNIS, J., concurs for the reasons stated at footnote 7 of the plurality opinion and following. I am not prepared at this time to adopt the views of the concurring Justices in State v. Babin, supra.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] Defendant had entered pleas of not guilty and not guilty by reason of insanity.
[2] The purported buy was made on January 29, 1974. Defendant was not arrested until five and one half months later. He was tried October 21, 1974.
[3] As will be noted hereinafter, counsel was not able to get the state to produce the reports for his perusal, or for introduction into evidence, or for making a part of the record. However, those reports have been attached to a supplemental brief filed on behalf of the state of Louisiana in this matter.
[4] While Deputy Renton testified that the surveillance report was done by either himself or his partner, Kignel, and he "couldn't recall" who, the report itself attached to the state's supplemental brief indicates under the designation "reported by" the name "Agent William Renton."
[5] That concurring opinion proposed an amplification of the State v. Weston rule in light of Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The opinion proposed that:

"Upon any showing that the witness has made a prior statement out of court in relation to the incidents forming the basis of the charge or its investigation, the defendant may be entitled to compel production of such specified prior statement, in order for the trial court to determine in camera whether the doctrine should be made available for use in cross-examination of the witness."
We suggested that the trial court make the statement, or a portion of it, available to the defendant if it concerned the same subject matter on which the witness had testified, or if the statement were inconsistent with the witness' trial testimony. Should the trial judge not grant defendant access to the prior statement, we proposed that the judge seal the statement and allow it to be made part of the record, so that an appellate court could review his decision if the case was appealed.
[6] See also in this connection the case of State v. Guagliardo, 146 La. 949, 84 So. 216 (1920).
[7] The trial judge in his per curiam states: "Having failed to obtain the police report for want of having laid a proper foundation, defense counsel attempted to impeach Agent Renton by use of notes made from Agent Renton's report, which the State allowed defense counsel to review prior to trial. The Court refused to allow the defense counsel to make reference to these notes in impeaching Agent Renton's testimony. To have done otherwise would have allowed defense counsel to make indirect reference to the police report where, having not laid the proper foundation, he was prohibited from making direct reference to the report."

Furthermore, the judge at trial sustained the objection immediately upon the heels of counsel's expressing that for purposes of impeachment he wanted to use the information that he had obtained.
[8] The state has filed a supplemental brief apparently attempting to augment the record (in effect something of a questionable matter) by attaching an affidavit of Agent Renton (surely procedurally impermissible) explaining that indeed there was an inconsistency in his trial testimony and his report. In the trial testimony he witnessed the exchange near the stairway with his binoculars and in the report he had said that the agent had gone into the apartment and he did not view what had gone on inside. The mistake on the report occurred by reason of the fact that he had helped make multiple cases in a short span of time including a second incident involving this defendant on the 31st of January 1974, two days after the subject crime, he relates in the affidavit.