THOMPSON, J.
 

 The two defendants were charged with robbery, that is to say, in common parlance, with holding up one Robert McGee and forcing him to turn over to them $3,500 which the said McGee held in trust for the Great Southern Lumber Company.
 

 Bankston pleaded guilty, and a jury of his own selection declared by its verdict that Morris was likewise guilty.
 

 From a sentence to hard labor in the penitentiary, Morris appeals.
 

 His counsel reserved seven bills of exception, but only four of them are mentioned in counsel’s brief.
 

 We have examined the three not discussed (bills 4, 5, and 7) and find no merit in them.
 

 Bill No. 1. .
 

 Bankston was placed on the stand by the state, examined in chief, and tendered to defendant for cross-examination.
 

 The cross-examination was quite lengthy, and after redirect examination, the witness was discharged, and court adjourned for the day. When the case was resumed the next morning, counsel for defendant requested that the witness be recalled for further cross-examination.
 

 The bill recites that matters were brought out for the first time on redirect examination, and that it was on such new matters the cross-examination was desired. The court', however, states that the recall of the witness was for the purpose of laying a foundation for impeaching him, and denied the request.
 

 It matters not for what purpose the recall was desired, the rule is now well settled that the matter rests within the sound discretion of the trial judge, and his ruling will not be reversed unless it is made clear that such discretion has been abused. No such case is presented here. It is not suggested either in the bill or in the brief that the matters on which further cross-examination was desired were pertinent to the question of the guilt or innocence of the accused. State v. Bradford, 164 La. 423, 114 So. 83.
 

 Bill No. 2.
 

 Bankston testified to having made four statements concerning the robbery, three of which were made under oath.
 

 He testified that the first statement, or the original statement, was under oath and in writing, and was a true statement. Thereupon, counsel for the defendant, for the pur
 
 *1085
 
 pose of
 
 cross-examination,
 
 requested the court to order the district attorney to deliver to the defendant such original sworn statement.
 

 The district attorney stated that he did not have such statement in his possession or under his control. In view of this statement, the judge declined to order the production of the document.
 

 The district attorney, at the request of counsel for defendant, was then sworn, and testified that he had in his possession an affidavit signed by -Bankston which contained a statement implicating Fred Morris in the robbery. He did not know who had procured the affidavit, and that he merely held and used it as a memorandum to refresh his memory of Bankston’s statement. The defendant then renewed his request for the production of the document, and which was again refused by the court.
 

 Pretermitting for the moment the question of the right of the defendant to compel the production of the affidavit, we are unable to conceive of any legitimate purpose to be attained by the production of the affidavit.
 

 The person who had made the affidavit was, at the time it was called for, on the stand and subject to cross-examination. He had admitted making four statements at different times concerning the robbery, and had testified that the first statement, made under oath, was the true statement.
 

 It is not suggested in the bill that the document was wanted for the purpose of laying a foundation for impeaching the witness, nor to be introduced and used as evidence. Whether the affidavit exonerated or implicated the defendant Morris, it could not have been admitted in evidence, either for or against him, because it was purely hearsay, and because of the further fact that the one who made it was then on the’ witness stand. The witness had testified that the first affidavit was true; hence if the affidavit had been produced, it could not have added to or detracted from the testimony he had given on the stand.
 

 The argument of defendant seems to be based on the contention that the affidavit was a public instrument and any person was entitled to inspect and examine it.
 

 Our conclusion is that the affidavit was not a public document, nor a matter of public record, but was the property of the state, and that the district attorney could not be compelled to turn it over to the counsel for the defendant.
 

 The rule stated in the Am. & Eng. Ency. of Law, vol. 23, p. 179, under the title of “Production of Documents,” subtitle, “Fishing Examination,” is that the courts uniformly decline to grant an application for production and inspection where it is merely for the purpose of a fishing examination, as where it is made .to discover whether dr not there is evidence contained in the document which will be useful to the applicant, etc.
 

 And in Corpus Juris, vol. 16, p. 858, it is said- to be a general rule of criminal law that defendant has no right to inspect a document or article in the possession of opposing counsel, but which is not ottered in evidence.
 

 Our own jurisprudence furnishes a case quite similar to the instant one. We refer to the case of State v. Simon, 131 La. 520, 59 So. 975.
 

 In that case the defendant was on trial for murder, and a state witness had said on cross-examination that he had testified on two previous occasions, a first time in the district attorney’s private office, and a second time on the preliminary examination of the case, and that his testimony had been the same as it was then, and had been taken down in writing. The counsel for the defendant orally and in open court called upon
 
 *1087
 
 the district attorney to produce the testimony given in his private office. The district attorney would not do so, and the court refused to compel him, although counsel stated that the object was to impeach the witness by showing that the said testimony was different from that on the trial.
 

 In that case, as in the present case, it was contended that the document was a public document, and that the defendant was entitled to access to it. This court held:
 

 “That the document was not a public document; but even if it had been, and even if the ruling denying access to it had it been erroneous, there would be no ground for reversal, because the document, even if produced and found to be conflicting with the testimony on the trial, would have been inadmissible in evidence; since the sole purpose for which it was wanted was for impeaching the witness, and it would have been inadmissible for that purpose, the proper foundation for its introduction in evidence not having been laid.”
 

 The circumstances in that ease were much more favorable to the accused than they were in the instant case.
 

 In the present case, the counsel did not disclose any purpose for which he desired the production of the document, whether to be used as evidence or for the purpose of impeachment. If to be used for evidence, then the answer is that'it would not have been admissible. If for impeachment, then the answer is the same as given in the cited case — no proper foundation had been laid.
 

 In a more recent case, a party was charged with arson, and was convicted, but the conviction was set aside and a new trial granted. On the first trial, the defendant employed a stenographer, who happened to be a deputy clerk, to take down all of the testimony, which was done, but only such parts of the testimony as the attorneys deemed necessary to be attached to bills of exception were transcribed and filed in court.
 

 In advance of the second trial, the district attorney took a rule on the stenographer to show cause why he should not transcribe his stenographic notes of all of the testimony and file the transcript in court. The attorneys for the defendant answered the rule on behalf of the defendant, alleging that the stenographer’s notes were not official documents, but were the private property of the defendant. The rule was made absolute, but was annulled by this court on an application for a prohibition. '
 

 The court held that the stenographic notes were not matters of public record, but were the property of the stenographer and his employer, and the district attorney was not entitled to a transcript of such notes, or to have them filed as a public record. The court, among other reasons, stated that a transcript of the original evidence would not be admissible on the second trial as preliminary evidence, though it would perhaps be useful for purposes of impeaching or refreshing the memory of the witnesses. State v. Chaney, 153 La. 372, 95 So. 866.
 

 If the testimony taken at a public trial between the state and accused and paid for by the accused is the private property of the accused, and not a public record, and the state has no legal right to its production and inspection for any purpose, then for a like reason a mere ex parte affidavit, procured by the state, in the possession of the district attorney, is not a public document, but the private property of the district attorney; and the accused who happened to be implicated in said affidavit is not entitled to its production and inspection.
 

 There is no material difference in the character of the document here involved and the ones in the two cases cited, and we can conceive of no reason why a distinction should be made in the rights of the accused in such matters'and the rights of the state.
 

 Bill No. 3.
 

 The defendant, being on the stand as a witness in his own behalf, was asked on
 
 *1089
 
 cross-examination (1) if lie had ever been arrested in Washington parish, and (2) if he had ever been charged with crime in Washington or any other parish.
 

 The defendant’s counsel objected on the ground, so the bill states, that the questions in form and substance are illegal, unlawful, irrelevant, immaterial, and wholly inadmissible and purely prejudicial.
 

 In counsel’s brief, it is contended that the state should have been restricted to the question, “What crime have you ever been convicted of?” and not as to what crimes he has been charged with.
 

 In State v. Foster, 153 La. 158, 95 So. 536, we held that a defendant, on cross-examination, may be aslted if he is charged with another offense at this time, and if other bills are pending against him, citing a long list of authorities. See, also, State v. Brown, 154 La. 12, 97 So. 265.
 

 Bill No. 6.
 

 The state had proved that defendant Morris had borrowed a pistol on the day or night preceding the robbery, and which pistol was identified as the one used in the holdup.
 

 The defense then offered to prove, by way of explanation, by a Mr. and Mrs. Shelly Spears, that one week prior to the accused’s borrowing the pistol, he had been pursued and fired upon three times at night while on his way from Bogalusa to Angie in company with the Spears.
 

 The purpose of this testimony was to ereate the inference or to make an impres-sion on the minds of the jurors that the pistol had been borrowed for his protection. The alleged prior assault on the defendant had not been made known to the officers, and there was nothing to indicate that the shots were intended for Morris rather than Spears or his wife, all of whom were in the car at the time said shots were fired.
 

 Evidence showing preparation is always admissible for the state, such as procuring a pistol which was used in a robbery committed the day following. And explanation of such acts of preparation is always admissible for the defendant. State v. Stockett, 115 La. 743, 39 So. 1000.
 

 In the case cited, evidence of threats on the part of the deceased against the life of the accused was held to be admissible in explanation of proof by the state that defendant borrowed a pistol the evening before, which was used in the killing of the deceased.
 

 The borrowing of the pistol was so intimately connected, in point of time, with the threats of the deceased that the jury might well have inferred that the pistol was procured for the purpose of defense, and not for the purpose of making an attack. In other words, the proof of threats were explanatory and tended to furnish a reason for borrowing the pistol.
 

 Here there was not the slightest connection between the alleged shooting at the defendant and his procuring the' pistol. A week intervened between the two acts, and we are unable to perceive how evidence of the alleged shooting, if, indeed, it could be proved that the shots were fired at defendant, could be said to furnish an explanation of the act of borrowing the pistol which was used in committing the robbery the day following.
 

 The evidence was clearly irrelevant and inadmissible.
 

 For the reasons assigned, the verdict and sentence are affirmed.
 

 O’NIELL, C. J., and ST. PAUL and ROGERS, JJ., dissent on refusal to grant a rehearing.