118 So.2d 688 (1960)
Al HEWITT et al., Plaintiffs-Appellants,
v.
Dozier B. WEBSTER, Clerk of Court, et al., Defendants-Appellees.
No. 9186.
Court of Appeal of Louisiana, Second Circuit.
March 10, 1960.
*689 Tucker, Bronson & Martin, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for defendants-appellees.
Edwin L. Blewer, Dist. Atty. and John A. Richardson, Asst. Dist. Atty., Shreveport, for intervenor-appellee.
AYRES, Judge.
Plaintiffs, by this action, seek to have declared public records subpoena returns for witnesses to appear before a grand jury and, as such, subject to their inspection under the provisions of LSA-R.S. 44:1 et seq., commonly known and referred to as the Public Records Act. Made defendants were the Clerk of Court and Sheriff of Caddo Parish, Louisiana, in and for which parish the grand jury was impaneled and in which plaintiffs reside and of which they are citizens and electors.
The State of Louisiana, through the district attorney for the First Judicial District in and for Caddo Parish, Louisiana, intervened and opposed plaintiffs' demands, to which the defendants had interposed exceptions of no cause and of no right of action. From a judgment sustaining the exceptions and dismissing plaintiffs' suit, they have appealed.
The primary and decisive issue is whether the returns on the subpoenas issued for the appearance of witnesses before the grand jury are public records, or such public records, as are within the contemplation of the Public Records Act and, therefore, subject to inspection. All other issues presented, such as the interest or lack of interest of plaintiffs to institute and maintain this action or of the State to intervene, or as to the capacity or propriety of the clerk and sheriff to stand in judgment, or as to whether the issue is moot are indecisive and their consideration may be entirely pretermitted and the principal issue resolved.
The definition of public records, as contained in the statute, is very broad and apparently all-inclusive, as is readily ascertainable by a mere reading of § 1 thereof, which we quote:
"All records, writings, accounts, letters, and letter books, maps, drawings, memoranda and papers, and all copies or duplicates thereof and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government or officer, or any board or commission or office established or set up by the Constitution or the laws of this *690 state, or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the Constitution or the laws of this state are public records, subject to the provisions of this Chapter except as hereinafter provided."
That the coverage of the statute is extensive is further emphasized in § 3 which makes the statute apparently applicable to all public records concerning the administration, management, conduct, direction and business of the office or department or force of any sheriff, district attorney, police officer or investigating agency, except when such records are held as evidence in an investigation or for the prosecution of a criminal charge prior to their use in open court or to the final disposition of the charge.
One of the positions taken by the State and defendants is that the Public Records Act is a general statute and is without application and is not controlling in the presence of special laws and the expressed public policy as regards the sanctity, security, and secrecy of the proceedings of grand juries. That the Public Records Act is a general statute having application generally to and covering the whole subject matter of public records must be conceded. Equally obvious is that special and particular statutes or sections of the Code of Criminal Procedure, pertaining to grand juries, are special laws as contradistinguished from general laws in that they pertain to and encompass a special and particular subject, namely, grand juries.
The general rule is that where there is apparent conflict between a general law and a special law on the same subject, the latter must prevail in the particular matter to which it applies. Even though the general law may have been passed subsequent to the passage of the special law, the special law is not thereby repealed by implication and it is only affected if reference is made to it expressly. State ex rel. Texada v. Capdevielle, 140 La. 229, 72 So. 946; Kearns v. City of New Orleans, La. App., 160 So. 470. Indeed, it is well settled that a general statute does not have the effect of repealing a special law upon the same subject matter unless the intent to repeal is so plain and evident that it cannot be doubted. State of Louisiana ex rel. Warren Realty Company, Inc., v. City of New Orleans, 226 La. 297, 76 So.2d 308; Wenk v. Anisman, 211 La. 641, 30 So.2d 567; Town of Abbeville v. Police Jury of Vermilion Parish, 207 La. 779, 22 So.2d 62; Third Dist. Land Co., Limited, v. Geary, 185 La. 508, 169 So. 528; State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, 130 So. 46. It will not be presumed, where the legislature enacted a special statute for a particular case, that it intended its repeal or amendment by the subsequent enactment of a general statute on the same subject matter. City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309; State ex rel. Day v. Rapides Parish School Board, 158 La. 251, 103 So. 757; Cumberland Telephone & Telegraph Co. v. Morgan's Louisiana & T. R. & S. S. Co., 112 La. 287, 36 So. 352; Welch v. Gossens, 51 La. Ann. 852, 25 So. 472. The jurisprudence of this State is in accord with the rule generally prevailing. This rule is stated in 50 Am. Jur., pp. 562-563, "Statutes," § 561, as follows:
"It has been broadly stated that the rule as to repeals implied from repugnancy of provisions applies as well between a general and a special or local act as between two general ones. As a general rule, however, general or broad statutory provisions do not control, modify, limit, affect, or interfere with special or specific provisions. To the contrary, to the extent of any irreconcilable conflict, the special or specific provision modifies, qualifies, limits, restricts, excludes, supersedes, controls, and prevails over the general or broad provision, which accordingly must yield to the special or specific provision, and operate only upon such cases as are not included therein. The special or specific act and the general or *691 broad law stand together, the one as the law of a particular case, and the other as the general rule. Hence, the special or specific provision is often referred to as an exception to the general or broad provision. These rules prevail where there is a repugnancy between the two acts, and no manifestation of a different intent to be found in the statute."
and in 82 C.J.S. Statutes § 298c, p. 515,
"A subsequent statute which is general does not repeal or abrogate a former statute which is special and intended to operate on a particular subject, or a particular phase of a single subject, * * *."
In this regard, it may be appropriate to observe that the Code of Criminal Procedure provides that the sessions of grand juries shall be secret (LSA-R.S. 15:215), and that, by his oath, a grand juror is bound to "keep secret his own counsel, that of his fellows and that of the state; * *" (LSA-R.S. 15:204).
The historical origin and development of the grand jury system was extensively discussed by Chief Justice Fournet of the Louisiana Supreme Court, in State v. Revere, 232 La. 184, 94 So.2d 25, 29, in the course of which it was stated:
"Not only has the grand jury been, traditionally, an inquisitorial body charged with determining whether probable grounds for suspicion of a crime exists, but, from its very beginning, its sessions have been surrounded by a cloak of seclusion and secrecy that has been jealously guarded and preserved during the intervening centuries as the only means of insuring that it be permitted the freedom of action necessary for a vigorous and effective discharge of its duties. The reasons underlying this necessity for secrecy are manyfold. Among them are: (1) It promotes freedom in the disclosure of crime; (2) prevents coercion of grand jurors through outside influence and intimidation and thus permits a freedom of deliberation and opinion otherwise impossible; (3) protects the safety and freedom of witnesses and permits the greatest possible latitude in their voluntary testimony; (4) prevents perjury by all persons appearing before the grand jury; (5) prevents the subornation of perjury by withholding facts that, if known, the accused or his confederates might attempt to disprove by false evidence and testimony; (6) avoids the danger of the accused escaping and eluding arrest before the indictment can be returned; and (7) keeps the good names of the persons considered, but not indicted, from being besmirched. Thus it may be seen that the secrecy that has from time immemorial surrounded the grand jury sessions is not only for the protection of the jurors and the witnesses, but for the state, the accused, and, as has been said, for society as a whole. * * *

* * * * * *
"* * * Our statutes demand that grand jurors, witnesses, and all authorized persons be administered the oath by which they swear to keep secret the proceedings of the grand jury and that secrecy cannot, thereafter, be invaded. RS 15:204, 212, 213, 215, 470, 471; State v. Jones, 8 Rob. 616; State v. Watson, 34 La.Ann. 669; State v. Lewis, 38 La.Ann. 680; State v. Britton, 131 La. 877, 60 So. 379, and State v. Taylor, 173 La. 1010, 139 So. 463."
Germane to the subject and appropriate to the matter under discussion is a statement contained in "State Grand Jury Handbook," prepared under the auspices of the Section of Judicial Administration of the American Bar Association, which we quote:
"Secrecy as to all Grand Jury proceedings, including not only action upon an Indictment or Presentment, but the fact that any such matter was considered or any witnesses called, is of *692 the utmost importance. Thus only can the Grand Jurors themselves be protected from being subjected to pressure by persons who may be involved in the action of the Grand Jury. Thus only can persons be prevented from escaping while an Indictment against them is under consideration. Thus only can witnesses before the Grand Jury be prevented from being tampered with, or intimidated, before they testify at the trial. Thus only can such witnesses be encouraged to give the Grand Jury information as to the commission of crime. Thus only can an innocent person who has been improperly subjected to a charge, but where the Indictment has been dismissed, be saved the disgrace attendant upon the making of such a charge. Note that to achieve the above protection for the Grand Jury, for the individuals involved, including the witnesses, and for the citizens at large, this pledge of secrecy is paramount and permanent." (Emphasis supplied.)
In State v. Britton, 131 La. 877, 60 So. 379, 380, the defendant sought to elicit from the district attorney, the clerk of court and the sheriff and their deputies, information as to whether subpoenas had been issued and served for the appearance of witnesses before a grand jury, and whether any witnesses had appeared before the grand jury. In upholding a ruling of the lower court in sustaining an objection to the request made, the Supreme Court stated:
"The rulings of the court were correct. It is a general rule, and one well settled, that testimony concerning the grand jury must come from others than the members of said jury. 1 Wharton, Criminal Law, §§ 509, 512; 1 Bishop's Crim.Pro. § 874; State v. Lewis, 38 La.Ann. 680; State v. Comeau, 48 La. Ann. [249,] 250, 19 So. 130; State v. Richard, 50 La.Ann. 210, 23 So. 331; State v. Perioux, 107 La. 601, 31 So. 1016. We refer to Greenleaf, vol. 1, par. 252, in support of the ruling of the trial judge that the rule is equally applicable to the prosecuting officers of the state. The rule, for the same reason, is applicable to other attaches of the court, with reference to the evidence sought, to the effect that the clerk had not issued, and the sheriff had not served, subpoenas upon witnesses to appear before the grand jury."
Thus, in the Britton case, it was held that neither the clerk and his deputies nor the sheriff and his deputies, nor the district attorney could testify as to whether grand jury subpoenas had been issued or served. The production of the subpoenas and the returns thereon would have been equally objectionable and amenable to the same ruling. It would appear that an accused affected directly by the actions of the grand jury would have a better right to, and a greater interest in, the information sought than third persons having only a general interest.
The law of secrecy as regards the proceedings of the grand jury includes, as a matter of public policy, the names of the witnesses who appear before the jury. To those who may be affected by their testimony, publication of the names of the witnesses without further information would, no doubt, in many instances, be sufficient to apprise those intended to be investigated of their forthcoming investigation by the grand jury. Thus, it is evident by the mere revelation of the names of the witnesses the law of secrecy as regards the proceedings would be thwarted and the purposes intended to be attained defeated.
From neither the facts nor the law could the documents in question be characterized as permanent public records. We have been referred to no authority, and our search reveals no authority, whereby the clerk of court is directed or authorized to issue grand jury summonses, or that either the sheriff or the clerk is *693 designated custodian for such subpoenas or returns, or that, in fact, a custodian has even been designated for those documents. Too, it may be pointed out that neither the witnesses appearing before a grand jury are paid for their appearance, nor the sheriff remunerated for serving the subpoenas. Hence, no record for public inspection or auditing is permitted or authorized. The keeping or preservation of these or similar records would contravene both the statutory provisions and public policy as to secrecy of grand jury proceedings. A grand jury may, on its own initiative, investigate any matter coming to its attention, from whatever source, and, for that purpose, may receive testimony of witnesses voluntarily appearing, or it may issue its own summonses and subpoenas without the enlistment, or intervention, of the services of any public official or office.
The grand jury has the power to act in only one of the following ways: (1) by returning a true bill; (2) by returning a "no bill," or not a true bill; and (3) by pretermitting entirely the matter investigated. It is prohibited from otherwise making any report on any matter submitted to it for investigation, except as the law may expressly so provide. LSA-R.S. 15:210. Included in the exception is the inspection and report to be made of the prisons, hospitals, and public institutions maintained within the parish in which the grand jury is impaneled. LSA-R.S. 15:211.
We know of no statutory provision for the keeping or preservation, by the grand jury, of the subpoenas and returns for the witnesses to appear before it. Their use is only temporary and no purpose could be served by their preservation as permanent records.
Moreover, it was held, in State v. Bankston, 165 La. 1082, 116 So. 565, that an ex parte affidavit of the accused's codefendant, procured by the State and in possession of the district attorney, was not a public document nor a matter of public record, but was the private property of the district attorney, who could not be compelled to turn it over to counsel for the accused for inspection. The court likewise, in State v. Mattio, 212 La. 284, 31 So.2d 801, expressed considerable doubt that a police report was a public record within the contemplation of the public Records Act. Such reports were held, in State v. Lee, 173 La. 966, 139 So. 302, not to be public documents but private property of the State.
See, also, State v. Dallao, 187 La. 392, 175 So. 4, 20. There, it was stated:
"The defendant Cauche complains of the ruling of the trial judge refusing him oyer and inspection of statements, reports, confessions, and documents alleged to be in the possession of the police department. We find no error in the ruling. So far as the documents called for were public in character, defendant was not entitled to their inspection until they had been used in open court. Section 5 of Act No. 242 of 1912, as amended by Act No. 255 of 1920, § 3. And so far as they were of a private nature, defendant was not entitled to their inspection until they were offered in evidence. State v. Lee, 173 La. 966, 139 So. 302."
While it is true that the authorities herein cited were criminal prosecutions and involve the statutory rights of the parties therein accused, the logic applied is probably more, but at least equally, applicable to this action wherein plaintiffs have no particular or special interest or rights to inspect and peruse generally the public records other than as specifically recognized and conferred upon them as members of society in general.
We conclude, therefore, that the subpoenas for the appearance of witnesses before the grand jury and the returns of service thereon are not such public records, as contemplated by the Public Records Act, and are, therefore, not subject to public *694 inspection. To otherwise hold, we would necessarily be compelled to give precedence and priority to a general law over statutes having application to a particular subject matter. Too, such ruling would be in disregard of the firmlyand well-established jurisprudence as regards the secrecy of grand jury proceedings, as heretofore pointed out. We, therefore, are of the opinion that the judgment sustaining the exception of no cause and of no right of action is correct and must be affirmed.
However, it may be appropriate to further point out that should it be held that the subpoenas and returns constitute public documents within the purview of the Public Records Act, they will clearly come within the exemptions provided in § 3 of the statute, which provides that the statute does not apply to records held by the prosecuting or enforcement officers "* * * until after the public records have been used in open court or the criminal charge has been finally disposed of." Where the district court makes a determination that the records for which oyer is sought are public records but exempt from the operation of the statute, no appeal lies from its decision, and we would therefore be without jurisdiction or authority to entertain the appeal. We would, in that event, have no alternative other than to dismiss the appeal. The portion of the section referred to, LSA-R.S. 44:3, subd. B, reads as follows:
"In all cases set forth in this Section and in R.S. 44:2, upon petition filed against the custodian of the records by one or more citizens in the district court of the parish where the record is so held, the district judge shall determine summarily in open court or in chambers whether the record is bona fide held for investigation of any violation of the laws of this state or as evidence in the prosecution of a criminal charge. No appeal shall lie from the decision of the judge." (Emphasis supplied.)
However, as heretofore stated, our affirmance of the judgment is based upon the conclusion that subpoenas for the appearance of witnesses before grand juries and the returns thereon are not subject to inspection under the authority of the Public Records Act.
For the reasons assigned, the judgment appealed is affirmed at appellants' cost.
Affirmed.