**STATE of Louisiana**

v.

**Jarrod GOURGUES**

**NO. 2016–KA–0774**

Court of Appeal of Louisiana, Fourth Circuit.

NOVEMBER 30, 2016

Perry M. Nicosia, District Attorney, Michael G. Morales, Assistant District Attorney, 34th Judicial District, District Attorney's Office, 1101 W. Saint Bernard Hwy., Chalmette, LA 70043, COUNSEL FOR APPELLANT, STATE OF LOUISIANA

Michael W. Magner, Thomas Slattery, JONES WALKER, LLP, 201 St. Charles Avenue, 49th Floor, New Orleans, LA 70170, COUNSEL FOR DEFENDANT/APPELLEE, JARROD GOURGUES

(Court composed of Judge Max N. Tobias, Jr., Judge Daniel L. Dysart, Judge Rosemary Ledet)

Judge Max N. Tobias, Jr.

On 4 August 2015, the state, through the Grand Jury of St. Bernard Parish, returned an indictment against the defendant, Jarrod Gourgues ("Gourgues"), charging him with one count of perjury, a violation of La. R.S. 14:123; three counts of malfeasance in office, violations of La. R.S. 14:134; and one count of theft over $1,500.00, a violation of La. R.S.14:67 A.

Defense counsel filed a motion for a bill of particulars and an omnibus motion for discovery and motion for preservation of evidence. Further, defense counsel filed a motion for release of grand jury testimony and evidence on 2 October 2015, which was followed on 9 November 2015, by the defense with a motion to suppress grand jury testimony and quash counts one and four of the indictment. Defense counsel filed an unopposed motion to file grand jury testimony under seal on 12 November 2015, which the trial court granted on 16 November 2015. On 2 December 2015, the state filed its answer to the motions for

discovery, inspection, and bill of particulars; its motion for discovery and other pretrial notices; and its memorandum in opposition to the defense motion to quash and motion to suppress. Defense counsel filed its memorandum in opposition to the state's reciprocal motion for discovery.

Arraignment was originally set for 18 November 2015, but was continued to 7 December 2015, by consent; the arraignment was finally held on 8 December 2015 whereat Gourgues entered pleas of not guilty to all five counts. The state subsequently filed its memorandum in opposition to the defense motion for bill of particulars on 14 December 2015. At a December 17, 2015 hearing, the trial court recused itself from the instant case to avoid the appearance of impropriety; the case was realloted to another judge. The defense counsel filed a supplemental and amended motion to suppress grand jury testimony and quash counts one and four of the state's indictment on 29 December 2015.

On 21 January 2016, defense counsel filed a motion and incorporated memorandum to quash the indictment due to the state's violations of grand jury secrecy pursuant to La. Const. art. V, § 34(A) and La. C.Cr.P. art. 434 A. Following a hearing, the trial court rendered a judgment on 25 May 2016, granting the motion to quash the indictment, and ordered that the motion to suppress grand jury testimony and quash counts one and four of the indictment were thus moot. This timely appeal by the state followed. La. C.Cr.P. art. 912 B(1).

### I.

The facts relevant to the instant appeal are as follows. In 2015, the Louisiana Attorney General's Office began investigating St. Bernard Parish President, David Peralta. Soon thereafter, Gourgues was approached and interviewed concerning that investigation. Gourgues later provided testimony at a grand jury hearing related to the Peralta investigation. As a result of Gourgues' grand jury testimony, he became a subject of an investigation, and was subsequently indicted by the Grand Jury of St. Bernard Parish on one count of perjury, three counts of malfeasance in office, and one count of theft. He was arraigned and entered pleas of not guilty.

According to the record, the trial court issued a subpoena *duces tecum* to the St. Bernard Parish Government ("SBPG") on 17 June 2015, ordering that the custodian of records produce the following documents covering the period of 1 January 2012 through 1 June 2015:

(1) A copy of Jarrod Gourgues' personnel file, including but not limited to any cooperative endeavor agreements or memorandums of understanding between the St. Bernard Parish Sheriff's Office ("SBPSO") and SBPG as well as any certificates of completion for any governmental ethics courses and/or receipt of any policy manuals outlining employee code of conduct and prohibited transactions with that governmental entity, which was to include any official titles and job description/duties for same;

(2) copies of any time sheets, leave slips, or time clock logs including but not limited to actual or third party manual entries into any time keeping system for Gourgues;

(3) copies of Gourgues' fuel card logs for his assigned government vehicle including but not limited to any identifying numbers, all card transaction receipt dates, times and locations; and

(4) Gourgues' swipe card entry logs.

On 1 July 2015, WWL–TV Channel 4 investigative reporter, David Hammer ("Hammer"), sent by email a public records request pursuant to the Louisiana

Public Records Act, requesting that the SBPSO "provide any and all records documenting hours worked, including start times and end times for each shift, for Jarrod Gourgues from October 1, 2014 through June 30, 2015." On 2 July 2015, the trial court issued a subpoena *duces tecum* to the SBPSO ordering that the custodian of records produce the following documents covering the period of 1 October 2014 through 5 June 2015: (1) copies of any check stubs or direct deposit records for hours worked as well as any check stubs or direct deposit records of pay from details or the L.A.C.E. (Agency Compensated Local Enforcement) program, and (2) CAD (Computer Assisted Dispatch) sheets for Gourgues for his unit number, badge number and/or employee number.

On 3 August 2015 (a day before the subject indictment), Hammer broadcasted a special "Eyewitness Investigation" report concerning Gourgues' alleged misconduct and the fact that such conduct was the subject of a grand jury investigation; the report was also available to the public on WWL–TV's website. In the report, Hammer stated that the SBPSO provided WWL–TV with two grand jury subpoenas that showed that "the Attorney General [was] reviewing time sheets and sign-in and sign-out times for Gourgues, covering the six-month period when Gourgues was both the parish's Road Department superintendent and a part-time sergeant in the sheriff's office."

As a result of the revelations concerning the grand jury subpoenas in Hammer's report, the defense counsel filed a motion to quash the indictment due to the state's violations of grand jury secrecy pursuant to La. Const. art. V, § 34(A) and La. C.Cr.P. art. 434 A.

## II.

In its sole assignment of error, the state contends that the trial court abused its discretion in granting Gourgues' motion to quash the indictment.

This court has held that a district court's decision to grant a motion to quash is discretionary and is reviewed with great deference to the trial court. *State v. Barahona*, 15–0979, p. 2 (La.App. 4 Cir. 3/23/16), 192 So.3d 191, 193, citing *State v. Thomas*, 13–0816, pp. 6–7 (La.App. 4 Cir. 3/19/14), 138 So.3d 92, 97, *writ denied*, 14–0807 (La. 11/14/14), 152 So.3d 878. As such, a Louisiana appellate court "generally review[s] trial court rulings on motions to quash under an abuse-of-discretion standard." *State v. Brown*, 15–1319, p. 7 (La. App. 4 Cir. 4/20/16), 193 So.3d 267, 271, citing *State v. Love*, 00–3347, pp. 9–10 (La. 5/23/03), 847 So.2d 1198, 1206 and *State v. Batiste*, 05–1571 (La. 10/17/06), 939 So.2d 1245.

La. Const. Art. V, § 34(A) states:

There shall be a grand jury or grand juries in each parish, whose qualifications, duties, and responsibilities shall be provided by law. The secrecy of the proceedings, including the identity of witnesses, shall be provided by law.

Additionally, La. C.Cr.P. art. 434 A, governing the secrecy of grand jury proceedings, provides in pertinent part:

Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such per-

sons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the attorney general or the district attorney, or with the court.

La. C.Cr.P. art. 434.1 sets forth the exceptions to grand jury secrecy:

A. Notwithstanding the provisions of Article 434, the state may disclose to state or federal prosecutors or law enforcement officers, or to investigators on the staff ₆of the district attorney or attorney general, or to expert witnesses, information and documents provided to a grand jury. Any person to whom such disclosure is made shall not engage in further disclosure of the material and shall use the disclosed material solely for purposes of investigation of criminal offenses and enforcement of criminal laws.

B. The district attorney shall also disclose to the defendant material evidence favorable to the defendant that was presented to the grand jury.

C. The district attorney may also disclose to a witness at trial, including the defendant if the defendant testifies, any statement of the witness before the grand jury that is inconsistent with the testimony of that witness.

The basis for the state's argument is that the trial court relied "entirely" upon *State v. Gutweiler*, 06–2596 (La. 4/8/08), 979 So.2d 469, and incorrectly applied the Public Records Act, La. R.S. 44:1, *et seq.*

In his motion to quash, Gourgues argued, in part, that the SBPSO unlawfully provided WWL–TV with the two subpoenas *duces tecum* issued by the trial court in connection with the grand jury investigation of Gourgues. He further alleged that although the subpoenas were sought under the Public Records Act, the grand jury secrecy requirements outlined in La. C.Cr.P. art. 434 trump the Public Records Act.[1] In support of his motion to quash, Gourgues relied upon *Gutweiler, supra; State v. Revere*, 232 La. 184, 94 So.2d 25 (1957); and *Hewitt v. Webster*, 118 So.2d 688 (La. App. 2d Cir. 1960).

₇The state concedes that the SBPSO disclosed the subpoenas *duces tecum* to Hammer as part of a public records request, yet argues that the indictment should not have been quashed.

First, the state argues that the trial court relied solely upon *Gutweiler*. However, this is incorrect because a review of the trial court's reasons for judgment discloses that the trial court relied upon *Gutweiler* and *Hewitt* in connection with an argument which is not before this court. (*See* n.1, *supra*). A close review of the trial court's reasons for judgment reveals that the trial court relied upon *Hewitt* and the provisions of Articles 434 and 434.1 in finding that the state violated the grand jury secrecy requirement. As such, the state's argument on this point is without merit.

Nonetheless, pertinent parts of the Supreme Court's reasoning in *Gutweiler* support the trial court's rationale for quashing the indictment. In *Gutweiler*, the state provided a transcript of a witness' grand jury testimony to its chief forensic arson expert witness, Dr. DeHaan, so that he would be able to offer an opinion to the

---

1. In its judgment, the trial court found that the state did not violate grand jury secrecy as it relates to Gourgues' argument that the state improperly disclosed details of an ongoing grand jury investigation to members of the SBPSO because that particular situation fell under the exceptions to grand jury secrecy contained in La. C.Cr.P. art. 434.1.

grand jury as to the cause and origin of the underlying incident in that case (an alleged arson). *Id.*, p. 3, 979 So.2d at 472–73. The assistant district attorney had not applied for or obtained the trial court's authorization to release the transcript to Dr. DeHaan. *Id.*, p. 3, 979 So.2d at 473. Dr. DeHaan later testified before the grand jury, which resulted in the grand jury's return of an indictment against the defendant. *Id.* The trial court found that Dr. DeHaan's status as an expert witness did not qualify him as an individual with a right of access to confidential information concerning grand jury proceedings as outlined in Article 434. *Id.*, p. 4, 979 So.2d at 473. For that reason, the trial court found that the prosecution's release of the transcript to Dr. DeHaan violated the constitutional and statutory mandate of grand jury secrecy and quashed the indictment. *Id.*, p. 23, 979 So.2d at 484.

The state appealed, and the appellate courts affirmed the trial court's ruling, accepting the trial court's rationale. *Id.*, p. 7, 979 So.2d at 475. The Supreme Court also affirmed the trial court and court of appeal's rulings, reasoning that "[t]he clear purpose of La. C.Cr.P. art. 434 is to mandate the secrecy of witness testimony and all other matters occurring at a convening of the grand jury." *Id.*, p. 10, 979 So.2d at 477. The Court further reasoned:

> This court has long recognized the strong public policy in favor of maintaining the secrecy of grand jury proceedings. *In re Grand Jury*, 98–2277, p. 7 (La. 4/13/99), 737 So.2d 1, 8; *State v. Trosclair*, 443 So.2d 1098, 1103 (La. 1983), *cert. dismissed*, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984).

\* \* \*

Considering the strong public policy underlying the Legislature's mandate of secrecy in grand jury proceedings, as recognized in our jurisprudence, we find the State's release of grand jury materials to Dr. DeHaan was sufficient by itself to quash the indictment.

*Gutweiler*, pp. 14, 18, 979 So.2d at 479, 481.

The trial court in the case at bar relied upon *Revere* as support for its ruling, as did the Supreme Court in *Gutweiler*. *Gutweiler*, p. 13, 979 So.2d at 478. In *Revere*, the Court was presented with a grand jury secrecy violation: the presence of an unauthorized person in the grand jury room. *Revere*, 232 La. at 187, 94 So.2d at 27. The trial court quashed the ensuing indictment as a result of the violation, and the Supreme Court upheld that ruling. *Id.*, 232 La. at 208, 94 So.2d at 34. The Court reviewed the function of the grand jury and reasoned in pertinent part:

> Not only has the grand jury been, traditionally, an inquisitorial body charged with determining whether probable grounds for suspicion of a crime exists, but, from its very beginning, its sessions have been surrounded by a cloak of seclusion and secrecy that has been jealously guarded and preserved during the intervening centuries as the only means of insuring that it be permitted the freedom of action necessary for a vigorous and effective discharge of its duties. The reasons underlying this necessity for secrecy are manyfold [sic]. Among them are: (1) It promotes freedom in the disclosure of crime; (2) prevents coercion of grand jurors through outside influence and intimidation and thus permits a freedom of deliberation and opinion otherwise impossible; (3) protects the safety and freedom of witnesses and permits the greatest possible latitude in their voluntary testimony; (4) prevents perjury by all persons appearing before the grand jury; (5) prevents the subornation of perjury by withholding facts that, if known, the accused or his confederates might attempt to dis-

prove by false evidence and testimony; (6) avoids the danger of the accused escaping and eluding arrest before the indictment can be returned; and (7) keeps the good names of the persons considered, but not indicted, from being besmirched. Thus it may be seen that the secrecy that has from time immemorial surrounded the grand jury sessions is not only for the protection of the jurors and the witnesses, but for the state, the accused, and, as has been said, for society as a whole.

*Revere*, 232 La. at 194–95, 94 So.2d at 29–30.

While *Gutweiler* and *Revere* focused on the purpose of Article 434 and the function of the grand jury, in *Hewitt v. Webster*, the Second Circuit specifically addressed the issue of "whether the returns on the subpoenas issued for the appearance of witnesses before the grand jury are public records, or [were the subpoenas] such public records, as are within the contemplation of the Public Records Act and, therefore, subject to inspection." *Hewitt*, 118 So.2d at 689.

In *Hewitt*, the plaintiffs sought to have subpoena returns for witnesses to appear before a grand jury declared public records that would be subject to their inspection pursuant to the Public Records Act. On appeal, the court ruled that the subpoenas were not public records under the provisions of the Public Records Act, and were not subject to public inspection. *Id.*, 118 So.2d at 688. As part of its analysis, the court recognized that "the definition of public records, as contained in the statute, is very broad and apparently all-inclusive, as is readily ascertainable by a mere reading of Section 1." *Id.*, 118 So.2d at 689.

The *Hewitt* court stated:

That the coverage of the statute is extensive is further emphasized in § 3 which makes the statute apparently applicable to all public records concerning the administration, management, conduct, direction and business of the office or department or force of any sheriff, district attorney, police officer or investigating agency, except when such records are held as evidence in an investigation or for the prosecution of a criminal charge prior to their use in open court or to the final disposition of the charge.

*Id.*, 118 So.2d at 690.

Section 1 of the Public Records Act (La. R.S. 44:1) states in pertinent part:

All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.

La. R.S. 44:1 A(2)(a).

Section 3 of the Public Records Act (La. R.S. 44:3) currently provides:

A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state, which records are:

> (1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled, except as otherwise provided in Subsection F of this Section [.]

La. R.S. 44:3 A(1).

The *Hewitt* court held that the "Public Records Act is a general statute," whereas "special and particular statutes of sections of the Code of Criminal Procedure, pertaining to grand juries, are special laws as contradistinguished from general laws in that they pertain to and encompass a special and particular subject, namely, grand juries." *Hewitt*, 118 So.2d at 690. The court relied upon the general rule that "where there is apparent conflict between a general law and a special law on the same subject, the latter must prevail in the particular matter to which it applies." *Id.*

The court further reasoned:

> The keeping or preservation of these [subpoenas and returns for witnesses to appear before a grand jury] or similar records would contravene both the statutory provisions and public policy as to secrecy of grand jury proceedings. A grand jury may, on its own initiative, investigate any matter coming to its attention, from whatever source, and, for that purpose, may receive testimony of witnesses voluntarily appearing, or it

may issue its own summonses and subpoenas without the enlistment, or intervention, of the services of any public official or office.

\* \* \*

> We know of no statutory provision for the keeping or preservation, by the grand jury, of the subpoenas and returns for the witnesses to appear before it. Their use is only temporary and no purpose could be served by their preservation as permanent records.

\* \* \*

> We conclude, therefore, that the subpoenas for the appearance of witnesses before the grand jury and the returns of service thereon are not such public records, as contemplated by the Public Records Act, and are, therefore, not subject to public inspection. To otherwise hold, we would necessarily be compelled to give precedence and priority to a general law over statutes having application to a particular subject matter. Too, such ruling would be in disregard of the firmly—and well-established jurisprudence as regards the secrecy of grand jury proceedings, as heretofore pointed out.

*Hewitt*, 118 So.2d at 693–94.

We find a conflict between the provisions of the Public Records Act and the provisions of La. C.Cr.P. arts. 434 and 434.1. On one hand, La. R.S. 44:1 suggests that the SBPSO was required to produce the two subpoenas *duces tecum* to Hammer based upon his request. On the other hand, the provisions of Articles 434 and 434.1 require "persons having confidential access to information concerning grand jury proceedings" and/or "persons to whom the disclosure of information and documents provided to a grand jury is made" (the SBPSO) must "keep secret all other matters directly connected with a meeting of the grand jury," and "not en-

gage in further disclosure of the material." Simply stated, because the SBPSO had confidential access to the subpoenas *duces tecum*, it was required to keep secret the subpoenas themselves as well as the information contained therein.

■ Notwithstanding the absence of bad faith, the SBPSO violated the provisions of Articles 434 and 434.1 by providing Hammer with the subpoenas. The state argues that subpoenas are not secret documents, but "simply documents issued by the criminal justice system ordering a party to provide documents to the grand jury." However, this argument is misplaced because the subpoenas formed the basis of Hammer's WWL–TV report, which revealed the existence of an ongoing grand jury investigation focused on Gourgues. If the SBPSO would not have provided the subpoenas to Hammer, such information would not have been revealed to the public.

■ Considering the function and purpose of the grand jury and history of the strong public policy in favor of maintaining the secrecy of grand jury proceedings as discussed in *Gutweiler*, we do not find that the subpoenas *duces tecum* qualified as meaningless paperwork and hence subject to disclosure. As the *Hewitt* court held, "where there is apparent conflict between a general law (the Public Records Act) and a special law (the Code of Criminal Procedure) on the same subject, the special law must prevail. *Hewitt*, 118 So.2d at 690.

For these reasons, we hold that the state violated grand jury secrecy when the SBPSO provided the subpoenas *duces tecum* to Hammer. We reject the state's argument that it should not be punished

for the SBPSO's action because a sheriff's office is an agency of the state, similar to the offices of the attorney general, district attorneys, and police departments.[2]

We reach the same result even if we were to conclude that no conflict exists between the Public Records Act and the provisions of the Code of Criminal Procedure. That is, La. R.S. 44:3 exempts from disclosure documents such as the subpoenas *duces tecum* in this case, which were captioned "In Re Grand Jury Investigation." Based upon that caption alone, it is evident that the subpoenas contained information "pertaining to a criminal litigation, which could have been reasonably anticipated," and the SBPSO should not have released the documents to Hammer.

Finally, the state argues that even if it violated grand jury secrecy, in order for the indictment to have been quashed, Gourgues was required to show that the grand jury was actually prejudiced by the WWL–TV report. In support of this argument, the state cites an excerpt of the Supreme Court's reasoning in *Gutweiler*, wherein the Court recognized that "[w]e require demonstrable prejudice to quash an indictment on the ground that it was based on illegal evidence because to permit such a challenge would allow the accused in every case to 'insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury' resulting in 'interminable delay but add[ing] nothing to the assurance of a fair trial.' " *Gutweiler*, pp. 16–17, 979 So.2d at 480–81, citing *State v. Walker*, 567 So.2d 581, 584 (La. 1990). However, the state's reliance on this excerpt is misguided.

---

**2.** We note that the offices of district attorney and sheriff are both provided for and contained in the Judiciary Article (Article V) of the 1974 Louisiana Constitution. The constitu-

tional authority for the attorney general and police departments are contained elsewhere in the Constitution.

A full appreciation of the Court's reasoning in *Gutweiler* reveals that "demonstrable prejudice" is required to quash an indictment when the motion is based on illegal evidence, but when the motion to quash an indictment is based on a violation of grand jury secrecy, a defendant is not required to show prejudice:

We find that La. C.Cr.P. art. 442 and jurisprudence construing that article are not applicable to the issue before us: whether an indictment is properly quashed without a showing of prejudice by the defendant for violation of grand jury secrecy. It is not the illegality, *vel non*, of evidence before the grand jury that is at issue. Rather, the issue is the violation of La. Const. art. V, § 34(A) and La.C.Cr.P. art. 434 mandating grand jury secrecy. We require demonstrable prejudice to quash an indictment on the ground that it was based on illegal evidence because to permit such a challenge would allow the accused in every case to "insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury" resulting in "interminable delay but add[ing] nothing to the assurance of a fair trial." *Walker*, 567 So.2d at 584 (quoting *Costello v. United States*, 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956)).

\* \* \*

However, in *Revere* this court held the defendant is not required to show prejudice or injury in order to have an indictment quashed for the State's violation of grand jury secrecy because it would be impossible for the accused to prove the injury before the trial. *Revere*, 94 So.2d at 33. It is not the fact whether prejudice actually resulted that is of primary and vital concern, but that an opportunity was made possible to exert prejudice and influence on members of the grand jury that must be guarded against. *Id.* The disclosure of the transcript of a witness's grand jury testimony to another witness, prior to his testimony, is a violation of grand jury secrecy no different than that of the presence of an unauthorized person in the grand jury room, and can require quashal of the indictment without the necessity of the accused showing prejudice or injury thereby. A court faced with the question of determining whether to relax the secrecy of the grand jury proceedings should recognize that if the secrecy requirement is regarded lightly it may foster the very practices which the grand jury functions to avoid. *Revere*, 94 So.2d at 30.

*Gutweiler*, pp. 16–17, 979 So.2d at 480–81.

The trial court highlighted in its written reasons for judgment:

In the present case, David Hammer of WWL TV broadcasted a special "Eyewitness Report" regarding the grand jury's investigation of Mr. Gourgues. The report was also accessible to the public via WWL's website. The broadcast referenced the unlawfully released grand jury subpoenas and the investigation into Mr. Gourgues' alleged "overlapping work hours." The media story aired on the day before the grand jury met and returned an indictment against Mr. Gourgues; thus, an opportunity was made to exert prejudice and influence on members of the grand jury. Coupling the Supreme Court precedent on maintaining the importance of grand jury secrecy with the prejudicial nature of the instant facts, the appropriate remedy is to quash the indictment.

█ Because of the "firmly and well-established jurisprudence" concerning the secrecy of grand jury proceedings and all matters related to those proceedings; the

holdings in *Revere* and *Gutweiler* stating that a defendant is not required to show actual prejudice in order to have an indictment quashed for the state's violation of grand jury secrecy; the fact that Hammer's report aired on the day before the grand jury returned an indictment against Gourgues; and that a trial court's decision to quash an indictment is a discretionary one, we do not find that the trial court abused that discretion in quashing the 4 August 2015 indictment against Gourgues.[3]

### III.

Accordingly, the trial court's ruling granting Gourgues' motion to quash the indictment is affirmed.

**AFFIRMED.**

---

**3.** Nothing in this opinion precludes (a) the state or district attorney from bringing the same matter at issue before a new grand jury or, (b) since the crimes charged are neither punishable by death or life imprisonment, the state or district attorney filing a bill of information charging Gourgues with the crimes that the first quashed indictment charged. *See* La. C.Cr. P. art. 437.